# JAY N. DARLING, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.

### Docket No. 6302.   Decided July 29, 1926.

1. Upon the evidence, *held*, that the value of 50 shares of stock, received in 1923 as compensation for services rendered, constitutes income in that year.

2. Evidence *held* insufficient to show error in the Commissioner's determination of the deductons to which petitioner was entitled for the years 1918, 1920, 1922 and 1923, on account of expenditures for traveling, supplies, periodicals, telephone, telegraph, office salaries and club dues.

3. Petitioner was not entitled to a deduction on account of amounts expended for the upkeep, operation and depreciation of an automobile not used in carrying on his business.

4. The useful life of a building used in petitioner's business determined from the evidence.

5. Under the provisions of section 274 (g) of the Revenue Act of 1926, the Board is without jurisdiction to change the Commissioner's determination of overassessments for any year. *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255.

*Clifford Yewdall, C. P. A.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

### Before LITTLETON and TRAMMELL.

This proceeding involves the questions of whether the Commissioner correctly held that 50 shares of stock received by petitioner in May, 1923, for services rendered, constituted income; and whether certain alleged expenditures in the years 1918 to 1923, inclusive, for traveling, entertaining, supplies, magazines and periodicals, telephone, telegraph, office salaries and expense, club dues, and the upkeep and operation of an automobile, together with depreciation of such automobile, and of a studio erected in 1921, constituted proper deductions from gross income for such years.

In the notice mailed to the petitioner on June 13, 1925, the Commissioner determined deficiencies and overassessments as follows:

| Years | Deficiency | Overassessment |
|---|---|---|
| 1918 | $1,378.14 | |
| 1919 | | $104.59 |
| 1920 | 98.16 | |
| 1921 | | 434.46 |
| 1922 | 2,346.43 | |
| 1923 | 3,727.19 | |
| Total | 7,549.92 | 539.05 |

### FINDINGS OF FACT.

The petitioner is a resident of Des Moines, Iowa, where he is engaged in business as a cartoonist. On May 9, 1913, he entered into a contract with the president and treasurer of the Register and Leader Co., a newspaper published at Des Moines, the name of which was subsequently changed to the Register-Tribune. In addition to an annual compensation, the contract provided as follows:

As further compensation for the ten years of service as contracted for, Gardner Cowles agrees with the said Jay N. Darling to pay him a stock bonus as follows, conditioned upon satisfactory service being rendered by the said Jay N. Darling during the term of this contract. * * * On April 1, 1923, provided at that time the said Jay N. Darling has rendered the full ten years of satisfactory service and completed this contract, the said Gardner Cowles agrees to transfer $5,000 (50 shares) of the common stock of the Register and Leader Company to said Jay N. Darling. The total amount of stock bonus covered by this contract, including the first $1,000, is to be $10,000 (100 shares).

\*        \*        \*        \*        \*        \*        \*

So long as the said Gardner Cowles or his heirs own a controlling interest in the Register and Leader Company, the said Jay N. Darling agrees not to dispose of any of his stock to any other buyer without first offering the stock to the said Gardner Cowles or his heirs on the same terms offered by the other buyer, that is, the said Gardner Cowles or his heirs are to have the first right to purchase any stock owned by the said Jay N. Darling in case he wishes to dispose of it.

The petitioner received certain shares of stock in the years 1913 to 1918, and 50 shares of stock in 1923. No question is raised, however, as to the stock received other than 50 shares received in 1923. The Commissioner held that the 50 shares constituted income to the petitioner and determined the value thereof to have been $7,000 at the time received.

On February 2, 1917, the petitioner entered into a contract with the Tribune Association, a newspaper published in New York, to furnish that newspaper with cartoons. The contract provided for a fixed annual salary to be paid by the Tribune to the petitioner in weekly installments. It further provided as follows:

It is understood that the party of the second part, [the petitioner herein], will come to New York City whenever the circumstances render it necessary or advisable and that he will make certain of said cartoons and illustrations in the City of New York and certain other of said cartoons and illustrations in the City of Des Moines, Iowa. * * * The party of the first part [the Tribune Association] will repay to the party of the second part the cost of the preparation of said mats and of the mailing thereof and will also repay to the party of the second part his traveling expenses in traveling from Des Moines, Iowa, to New York City, and from New York City to Des Moines, Iowa.

This contract remained in force until January, 1921, when another contract was entered into between the same parties which, so far as material to this proceeding, provided as follows:

The party of the first part [the Tribune Association] agrees to pay to the party of the second part the sum of Twenty Six Thousand ($26,000) Dollars per year during the term of this agreement, in equal payments of                    ($500) Dollars each, together with the additional compensation hereinafter referred to.  *  *  *  The party of the first part agrees that when in any quarter of the term of this agreement the gross amount of billings through the syndicating of the cartoons and illustrations furnished to the party of the first part by the party of the second part in accordance with this agreement shall exceed Eleven Thousand Seven Hundred ($11,700) Dollars, it will pay to the party of the second part as the additional compensation above referred to, an amount equal to 50 per centum of the excess of such gross quarterly billing over Eleven Thousand Seven Hundred ($11,700) Dollars per quarter.  *  *  * The said additional compensation shall be computed at the end of each quarter year of the term of this agreement  *  *  *.

      *         *         *         *         *         *         *

The party of the first part will repay to the party of the second part the cost of the preparation of said mats and of the mailing thereof and will also repay to the party of the second part his traveling expenses in traveling from Des Moines to New York City, and from New York City to Des Moines, and hotel bills while in New York City.

During the taxable years petitioner made numerous trips from Des Moines to New York City and return, spending considerable time in New York on each occasion, drawing cartoons and attending conventions and gatherings, for the purpose of obtaining information necessary in his business. Petitioner's traveling expenses for the taxable years were as follows: 1918, $1,781.32; 1919, $4,925.33; 1920, $6,081; 1921, $5,763.19; 1922, $5,695.65; 1923, $2,609.74.

Petitioner expended for entertaining and club dues certain amounts, entirely for business purposes, as follows: 1918, $985.54; 1919, $1,054.11; 1920, $740.00; 1921, $584.89; 1922, $462.79; 1923, $789.76.

He also expended amounts for supplies, magazines, periodicals, telephone, telegraph, office salaries and expenses, as follows: 1918, $741.57; 1919, $1,400.24; 1920, $1,651; 1921, $151.98; 1922, $1,511.61; 1923, $1,688.19.

During the years 1918 to 1923, petitioner engaged in sculptural work for the purpose of equipping himself for the profession of a sculptor when the time should come when he would be unable longer to carry on that of a cartoonist. In this work he used almost exclusively one of two automobiles owned by him. This automobile was also used to some extent in his business as a cartoonist. During this period he expended the following amounts in maintaining and operating this automobile: 1918, $498.17; 1919, $822.40; 1920, $1,423.82; 1921, $1,081.77; 1922, $1,008.60; 1923, $345.92.

In 1921, petitioner constructed a studio in which to carry on his business as a cartoonist, at a cost of $6,500. This building was used entirely in his business and was not suitable for use for any other

purpose. At the time of its construction it had a useful life in the petitioner's business of 15 years.

OPINION.

LITTLETON: The petitioner alleges that the 50 shares of stock of the Register and Tribune Co. were not income for the reason that, under the terms of the contract, he was restricted in the sale thereof, and it therefore had no readily realizable market value.

It was stipulated that, if the Board should hold that the petitioner was not prevented by the terms of the contract from selling the stock, the value as fixed by the Commissioner would be correct. The agreement between the petitioner and Cowles did not provide that the petitioner might not sell the stock, but merely that Cowles, the president and controlling stockholders of the newspaper should first be given the opportunity of purchasing the stock in case the petitioner wished to dispose of it. Had the petitioner desired to sell the stock and had Cowles declined to purchase it, he would have been free to dispose of it in any manner he might have deemed proper. Under these circumstances the Commissioner properly held that the value of the stock, amounting to $7,000, was income.

The total amounts expended by the petitioner for the various purposes set forth in the findings of fact, not including amounts claimed as exhaustion, wear and tear of the automobile and studio, and the total amounts allowed by the Commissioner in each of the years, are as follows:

|  | 1918 | 1919 | 1920 | 1921 | 1922 | 1923 |
|---|---|---|---|---|---|---|
| Total amounts claimed | $3,508.43 | $7,379.68 | $8,472.00 | $6,500.06 | $7,670.05 | $5,087.09 |
| Total amounts allowed by Commissioner | 2,257.19 | 2,313.50 | 2,407.28 | 4,517.77 | 5,239.40 | 3,615.88 |

The contract between the petitioner and the Tribune Association, dated February 2, 1917, provided that the Tribune should repay to the petitioner "his traveling expenses from Des Moines to New York and from New York to Des Moines." The contract of January, 1921, also provided that the petitioner should be repaid his traveling expenses and also his hotel bills.

The Board is unable to determine from the evidence whether or not under the contract of 1917, which remained in force until 1921, the petitioner was reimbursed by the Tribune Association for his hotel expenses, or what amount, if any, the Commissioner has allowed as a deduction on account thereof. Any amounts paid by the petitioner for traveling expenses and repaid to him by the Tribune would not constitute legal deductions from gross income unless the amounts so

received in reimbursement were included by him in gross income. We have no evidence that this was done. It was not necessary that amounts received as reimbursement for traveling or hotel expenses should have been reported as income.

The evidence does not show what portion of the total amount claimed as a deduction on account of amounts expended for club dues and entertaining was allowed or disallowed as a deduction by the Commissioner. The Board can not therefore determine whether the Commissioner committed error in connection with these items, nor can the Board determine, from the evidence, whether the Commissioner has denied petitioner the right to deduct any portion of the amounts expended for supplies, periodicals, telephone, telegraph, office salaries and expenses.

After eliminating the amount claimed as hotel and traveling expenses, and the upkeep of the automobile, the total of the deductions allowed by the Commissioner for each year, in the opinion of the Board, adequately cover the amounts to which the petitioner was entitled for expenditures for club dues, supplies, periodicals, telephone, telegraph, office salaries and expenses. The operating expense and depreciation of the automobile is not, in the opinion of the Board, a proper deduction in any event under the evidence submitted. It appears that the petitioner, when not otherwise engaged, studied and practiced the art of sculpturing for the purpose of equipping himself for the day when he would be no longer able, because of his age, to carry on the business of a cartoonist. The automobile in question was used for the most part in connection with this work in going from place to place and in transporting materials. This work was purely educational and was not carried on for profit. The expenses incident thereto were not, therefore, a proper deduction from gross income derived from his business as a cartoonist. The automobile was occasionally used in connection with his regular business, but the evidence as to the extent of such use is not sufficient to enable the Board to determine what portion of the expense or depreciation should be allocated thereto.

Upon the evidence submitted, the Board is convinced that the studio erected in 1921 had a useful life in petitioner's business not exceeding 15 years. The annual allowance for exhaustion, wear, tear and obsolescence thereof should, therefore, be computed upon that basis. The Commissioner allowed a deduction for exhaustion at the rate of 4 per cent per annum.

The Commissioner included in his answer to the petition a motion to dismiss the appeal in so far as it related to the year 1918, on the ground that the deficiency for that year was assessed on May 15, 1925, and that he had not thereafter made a final determination upon a

claim for abatement. Further, that the Board is without jurisdiction to consider the years 1919 and 1921, inasmuch as he has determined overassessments for those years.

The evidence shows that on May 27, 1925, the taxpayer filed claim for abatement of the deficiency for 1918, assessed without giving him the benefit of the hearing as provided by law, and that he also executed at the same time a bond with surety approved by the collector of internal revenue. Thereafter, he was granted a hearing upon his claim for abatement of the amount assessed for 1918 in connection with his protest of the amount of the deficiencies and overassessments for the years 1919 to 1923, inclusive. The notice of the deficiency mailed to the taxpayer on June 17, 1925, was stated by the Commissioner to be his final determination of the deficiencies and overassessments for the years 1918 to 1923, inclusive, and it is from that notice that this appeal was filed. No notice other than the notice of June 17, 1925, has ever been mailed to the taxpayer concerning any deficiency for the year 1918.

We are of the opinion that the notice from which this appeal was taken was a final determination of the taxpayer's claim for the abatement of the deficiency for 1918, and the Commissioner's motion to dismiss as to that year is denied.

The position of the Commissioner that the Board is without authority to make a redetermination for the years 1919 and 1921 is well taken and his motion to dismiss the appeal in so far as it relates to his determination of overassessments for the years 1919 and 1921 is sustained. Section 274(g) Revenue Act of 1926. *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*