CHARLES C. DIGGS, JR., AND JANET H. DIGGS, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4818–76.    Filed June 4, 1981.

*Hallison H. Young,* for the petitioners.
*Chauncey W. Tuttle, Jr.,* and *Christina M. Burkholder,* for the respondent.

NIMS, *Judge*: Respondent determined the following deficiencies and additions to tax:

| Year | Deficiency | Additions to tax under sec. 6651(a)[1] |
|------|-----------|-----------|
| 1971 | $3,448.16 | $862.04 |
| 1972 | 5,767.12 | 1,304.78 |

Concessions having been made, the substantive issues remaining for decision are:

(1) Whether unreimbursed travel expenses incurred by a U.S. Congressman in connection with his attendance at meetings of the National Black Political Conference in 1972 are deductible as ordinary and necessary business expenses under section 162;

(2) Whether the unreimbursed travel expenses incurred by the Congressman in connection with his attendance at the 1972 National Democratic Party Convention are deductible as ordinary and necessary business expenses under section 162.

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, except as otherwise expressly indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and the exhibit attached thereto are incorporated by this reference.

Petitioners resided in Detroit, Mich., at the time they filed their petition herein. Janet H. Diggs, the wife of Charles C. Diggs, Jr., is a party to this proceeding only by virtue of having filed joint Federal income tax returns with her husband for the years at issue. Mr. Diggs will be referred to herein as the petitioner.

During 1972 (the only year remaining in issue after the above-mentioned concessions), petitioner was a Member of the U.S. House of Representatives. He represented the 13th Congressional District of Michigan, which includes the city of Detroit. Petitioner served on the House Committee on Foreign Affairs and the House Committee on the District of Columbia.

Petitioner played a significant role at the Democratic National Convention held in Miami, Fla., in 1972. He was an official voting delegate to the convention and was Chairman of the Minorities Division of the Democratic National Committee. He served as the principal host, not only for the minority delegates, but also for other people who had similar concerns and who came to the convention. He participated in various discussions and strategies to try to achieve a favorable response to the petitions of the minority groups before the Platform Committee, the Credentials Committee, and the Rules Committee. The views of the various individuals had to be assessed to determine their feasibility, and there was an investigative aspect to this.

The National Black Political Conference was a nonpartisan group with approximately 10,000 people in attendance at its assembly held in Gary, Ind., on March 10 through 13, 1972. One of the reasons petitioner attended meetings of the National Black Political Conference was to make an assessment of the concerns of black citizens in the United States and to develop a national black agenda regarding those concerns. The conference was not a nonprofit exempt organization.

The agenda published by the National Black Political Conference was presented to the platform committees of the National Democratic Party and National Republican Party Conventions in 1972. Petitioner appeared before the platform committee of

the Democratic National Convention in support of the agenda published by the National Black Political Conference.

Growing out of the National Black Political Conference, of which petitioner was one of three co-conveners, was a permanent organization which came to be known as the National Black Assembly.

At the time of the trial of this case, petitioner ranked 19th out of 435 Members of the House of Representatives and was the senior ranking delegate from Michigan. He was also, in his words, "the senior member of Congress who happens to be black."

Certain of petitioner's constituents attended the Democratic National Convention in Miami and the meetings of the National Black Political Conference. Petitioner believed that his attendance and participation helped in having the views of his constituents represented.

Petitioner expended $1,303 for travel expenses, including meals and lodging, for attendance at meetings of the National Black Political Conference. In addition to the above-mentioned Gary meeting, this organization held meetings in various cities, as follows:

| | | |
|---|---|---|
| Feb. 20, 1972 | ...................... | Muskegon Heights, Mich. |
| Feb. 25, 1972 | ...................... | Chicago, Ill. |
| Feb. 28, 1972 | ...................... | Cleveland, Ohio |
| Apr. 10, 1972 | ...................... | Chicago, Ill. |
| Apr. 16, 1972 | ...................... | New York City, N.Y. |
| June 24, 1972 | ...................... | Las Vegas, Nev. |
| Aug. 4, 1972 | ...................... | Chicago, Ill. |
| Oct. 10, 1972 | ...................... | Chicago, Ill. |
| Oct. 20 through | | |
| Oct. 22, 1972 | ...................... | Chicago, Ill. |

Petitioner expended $1,083 for travel expenses, including meals and lodging, to attend the Democratic National Convention at Miami, Fla., from July 7 through July 15, 1972.

## OPINION

In 1972, petitioner was a Member of Congress, representing the 13th Congressional District of Michigan, which included Detroit. During that year, he incurred $1,303 in travel expenses, including meals and lodging, to attend meetings of the National Black Political Conference. In addition, he expended $1,083 in

1972 for travel expenses, including meals and lodging, to attend the Democratic National Convention held at Miami, Fla.

Petitioners take the position that the Congressman's primary purpose for attending such meetings was to investigate and ascertain the facts and concerns of minorities in order to better serve his constituents and reflect their views in proposed legislation and as a guide for voting. On this basis, they contend that the expenses were ordinary and necessary business expenses deductible under section 162(a)(2) and were not political expenses, the deduction of which is limited by sections 162(a), 162(e)(1) or (2), or by section 1.162–2(d), Income Tax Regs.

Respondent's position is that these costs are not deductible under section 162(a) because the meetings or conventions in question were primarily political in nature, and further, that section 162(e)(2)(A) denies a deduction under section 162 when the amounts in question were paid in connection with participation or intervention in political campaigning. Furthermore, argues respondent, petitioner's travel expenses are denied deductibility under section 162(e)(2)(B) because that section, in part, precludes a section 162 deduction for amounts paid in connection with any attempt to influence the general public with respect to legislative matters or elections.

Section 162(a) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including traveling expenses. The term "trade or business" includes the performance of the functions of a public office. Sec. 7701(a)(26). It is beyond question that the Office of Member of Congress falls within this definition.

At first blush it would appear that somewhere among the myriad categories of deductible travel expenses there should be an appropriate analogue to the instant situation. Judge Brown cataloged some of these in a dissenting opinion in *Rudolph v. United States*, 291 F.2d 841 (5th Cir. 1961), affd. per curiam 370 U.S. 269 (1962),[2] as follows:

Deductions have been allowed as "ordinary and necessary" to clergymen attending a church convention; to expenses of an employee attending

---

[2] The holding in the *Rudolph* case is not strictly comparable with travel expense deduction cases because *Rudolph* involved the includability in gross income of convention expenses paid by the taxpayer's employer. See *Rudolph v. United States*, 291 F.2d 841 (5th Cir. 1961), affd. per curiam 370 U.S. 269 (1962).

conventions of a related business group; to a lawyer attending a meeting of the American Bar Association; to a legal secretary attending the national convention of the National Association; to physicians attending medical conventions; to certified public accountants attending conventions; to university teachers in attending conventions or scientific meetings; to professional cartoonists attending political conventions; to persons attending the Red Cross Convention; to school teachers attending summer school; to attorneys attending an institute on Federal taxation; to employees sent to refresher courses to become more acquainted with new processes in the industry; to a furniture store sending its buyers to the annual furniture mart; to representatives to annual conventions of trade associations; and to an insurance agent away from home on business. [291 F.2d at 844–845. Fn. refs. omitted.]

To draw an analogy, however, between petitioner's situation and any of the foregoing would be to blur the line of distinction between petitioner's respective positions as a political figure and as a Member of Congress. Only those expenses incurred in the latter capacity and directly related to the performance of the functions of that office are allowable under section 162 and the regulations thereunder.

Section 1.162–2(a), Income Tax Regs., provides that only such traveling expenses as are reasonable and necessary in the conduct of a taxpayer's business and directly attributable to it may be deducted. Section 1.162–2, Income Tax Regs., entitled "Traveling Expenses," was first adopted on April 3, 1958 (by T.D. 6291, 1958–1 C.B. 63) and amended on August 27, 1958 (by T.D. 6306, 1958–2 C.B. 64). It has remained unchanged and, insofar as the provisions of section 1.162–2(d), Income Tax Regs., relating to political conventions are concerned, unchallenged in the courts since the date of the last amendment over 22 years ago. Suffice it to say that petitioners do not challenge the validity of this regulation and we can conceive of no reason to do so.

In connection with convention travel expenses, section 1.162–2(d), Income Tax Regs., provides:

Expenses paid or incurred by a taxpayer in attending a convention or other meeting may constitute an ordinary and necessary business expense under section 162 depending upon the facts and circumstances of each case. * * * The allowance of deductions for such expenses will depend upon whether there is a sufficient relationship between the taxpayer's trade or business and his attendance at the convention or other meeting so that he is benefiting or advancing the interests of his trade or business by such attendance. *If the convention is for political, social or other purposes unrelated to the taxpayer's trade or business, the expenses are not deductible.* [Emphasis added.]

Of course, the last sentence of this regulation does not bar the travel expense deduction of a taxpayer who attends a political convention for purposes directly related to his trade or business rather than for political purposes. The Board of Tax Appeals held to this effect in *Darling v. Commissioner*, 4 B.T.A. 499 (1926), and respondent states on brief that he does not challenge such a position. In *Darling*, the Board allowed a political cartoonist to deduct the expenses of attending a political convention.

As previously noted, respondent maintains that section 162(e)[3] is also involved. The legislative history of section 162(e) (which was added to the Code by Pub. L. 87–834, sec. 3(a), 76 Stat. 973 (1962), effective for taxable years beginning after Dec. 31, 1962) reveals it to have been a legislative response to regulations adopted in 1959 following the Supreme Court's decision in the companion cases of *Cammarano v. United States* and *F. Strauss & Son, Inc. v. Commissioner*, 358 U.S. 498 (1959). H. Rept. 1447, to accompany H.R. 10650, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 405, 422. In *Cammarano*, the Supreme Court upheld the disallowance under a then-existing regulation of expenses (concededly "ordinary and necessary") incurred to defeat a legislative initiative. In the course of its opinion, the Supreme

---

[3]Sec. 162(e) provides as follows:

(e) APPEARANCES, ETC., WITH RESPECT TO LEGISLATION.—

(1) IN GENERAL.—The deduction allowed by subsection (a) shall include all the ordinary and necessary expenses (including, but not limited to, traveling expenses described in subsection (a)(2) and the cost of preparing testimony) paid or incurred during the taxable year in carrying on any trade or business—

(A) in direct connection with appearances before, submission of statements to, or sending communications to, the committees, or individual members, of Congress or of any legislative body of a State, a possession of the United States, or a political subdivision of any of the foregoing with respect to legislation or proposed legislation of direct interest to the taxpayer, or

(B) in direct connection with communication of information between the taxpayer and an organization of which he is a member with respect to legislation or proposed legislation of direct interest to the taxpayer and to such organization,

and that portion of the dues so paid or incurred with respect to any organization of which the taxpayer is a member which is attributable to the expenses of the activities described in subparagraphs (A) and (B) carried on by such organization.

(2) LIMITATION.—The provisions of paragraph (1) shall not be construed as allowing the deduction of any amount paid or incurred (whether by way of contribution, gift, or otherwise)—

(A) for participation in, or intervention in, any political campaign on behalf of any candidate for public office, or

(B) in connection with any attempt to influence the general public, or segments thereof, with respect to legislative matters, elections, or referendums.

Court made it clear that the regulation there in question disallowed both "expenditures made in connection with efforts to promote or defeat the passage of legislation by persuasion of the general public" (hereinafter for our purposes called grass root campaigns) and also those expenditures incurred to directly influence legislative bodies (which the Supreme Court simply called "lobbying" expenses). 358 U.S. at 504.

The House report referred to above points out that section 162(e) is intended to provide a deduction for lobbying expenses incurred in a trade or business but not for the expenses of a grass root campaign. As regards the former, section 162(e), according to the House report, is intended to correct the anomaly that then existed between the *disallowance* of expenses incurred in connection with appearances before legislative bodies or before legislators and the *allowance* of expenses incurred in connection with appearances before executive or administrative officials with respect to administrative matters, or before the courts with respect to judicial matters.

The House report also provides that "the expenses may not be in connection with legislative matters such as nominations, etc., but rather must be in connection with *specific legislation or proposals for legislation*." (Emphasis supplied.) H. Rept. 1447, *supra*, 1962–3 C.B. at 422. The Commissioner's regulations pick up on this concept. Section 1.162–20(c)(2)(ii)(*a*), Income Tax Regs., provides that "The term 'legislation or proposed legislation' includes bills and resolutions introduced by a member of Congress or other legislative body * * * for consideration by such body as well as oral or written proposals for legislative action submitted to the legislative body or to a committee or member of such body."

Section 162(e), as finally enacted, includes two general categories of allowable deductions in connection with "Appearances, etc., With Respect to Legislation."[4] These are business expenses incurred in direct connection with appearances before legislative bodies (sec. 162(e)(1)(A)) and those incurred in direct connection with communication of information between the

---

[4]The Senate version of sec. 162(e) would have included a third category: expenses incurred in connection with communications between the taxpayer and employees or stockholders with respect to legislation. S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707, 730. This provision was not adopted.

taxpayer and an organization of which he is a member (sec. 162(e)(1)(B)).

Section 162(e) also contains two limitations on the allowance of section 162(e) deductions, to wit: no deduction is allowed for participation in, or intervention in, any political campaign on behalf of any candidate for public office—section 162(e)(2)(A); and no deduction is allowed in connection with any attempt to influence the general public, or segments thereof, with respect to legislative matters, elections, or referendums—section 162(e)(2)(B).

In *McDonald v. Commissioner*, 323 U.S. 57 (1944), the Supreme Court held that campaign expenses of a public official seeking election are not deductible. Section 162(e)(2)(A) is thus a codification of this rule. The Tax Court has consistently applied this rule in cases subsequent to *McDonald*. See *Martino v. Commissioner*, 62 T.C. 840 (1974), and cases cited therein. Furthermore, the House report states that it is not intended that any deduction be allowed for any amount paid or incurred for participation or intervention in "*any* political campaign for *any* candidate." (Emphasis added.) H. Rept. 1447, *supra*, 1962–3 C.B. at 422. In other words, the disallowance is not just limited to the campaign expenses of the candidate himself; all such expenses are disallowed.

Section 162(e)(2)(B) is intended to disallow deductions for grass root campaigns directed toward developing a point of view among the public generally which, in turn, is directed toward the legislators. H. Rept. 1447, *supra*, 1962–3 C.B. at 422.

With regard to his activities at the Democratic National Convention, petitioner testified, in part, as follows:

Q. Now, at the Democratic Convention, in 1972, in Florida, what role did you play at that convention?

A. Well, I was Chairman of the Minorities Division, which is a statutory division of the Democratic National Committee. And, in that capacity, I served as the supervisor of the office at the convention, as the principal host for not only the delegates but other people who had similar concerns and came to the convention, and participated in various discussions and strategies to try to achieve a favorable response to the petitions of the minority groups before the Platform Committee, the Credentials Committee, and the Rules Committee.

Q. Now, as a host, did you investigate and gather facts necessary to aid you in your congressional duties?

A. Well, the whole process involved an exchange of views and diaglogue, and investigations of issues among those that were there. It was not a monolithic group. They came from all over the country. They had various

points of view. These views had to be assessed, to determine their feasibility, and there was a certain obvious investigative aspect to this, as part of the guidance and leadership procedure, that I had to provide.

Q.   And as a result of gathering this data, it aided you in your support of legislation that you ultimately voted on?

A.   Well, the Platform Committee, in essence, is the repository for prospective legislation that would engage the party at the national level. And in that sense, those concerns, particularly since that party was the majority party in the Congress, that raised the level of its importance in terms of legislative concerns and prospective legislation, and much legislation did come as a direct result of the party's adherence to the planks of the platform.

With regard to his activities at the National Black Political Conference, petitioner testified, in part, as follows, on direct examination:

Q.   And what was the main purpose of the National Black Political Conference?

A.   Well, it was for the purpose of making an assessment of the concerns of black citizens here in the United States and beyond, because we did take up several issues involved in international relations. And to develop an agenda—which was developed—a national black agenda which itemized domestic concerns and international concerns. This was put in a published form. It was sent to the principals of both parties, and was the basis upon which the Congressional Black Caucus, which had also been organized in 1972—it served as a basis for a large part of their agenda, in carrying out their legislative duties.

Petitioner also testified, in part, as follows, on cross-examination:

Q.   And we have stipulated that there were some of the meetings that continued into October of which there was an assembly in Chicago, Illinois. Was there any—did this convention and assembly in October, 1972, was it part of the action of this National Black Political Convention to advise the public, blacks and whites, of the principles and purposes of the National Black Political Conference and of the minority which they represented?

A.   That's correct. We had an educational job to do, because we knew that without public opinion behind us, that the possibility of attaining certain objectives could be frustrated, and so therefore, in that sense, we sought to disseminate our objectives, you know, beyond our own community, and to form alliances with anyone beyond that who would support our common objectives. Because we called it a National Black Convention, and it was, in that sense, black, in that kind of participatory fashion, but it—really, the objectives are related to the disadvantaged, which obviously went beyond that.

The real thrust of petitioner's argument is that the principal motivation for his travel expenses was investigative, relating to the performance of the functions of his public office, rather than

political. He points out that the Fourth and Ninth Circuit Courts of Appeal have allowed travel expenses of Foreign Service officers who are required by law to return periodically to the United States from abroad to renew touch with the American way of life and so become better representatives of this country abroad: *Hitchcock v. Commissioner*, 578 F.2d 972 (4th Cir. 1978); *Stratton v. Commissioner*, 448 F.2d 1030 (9th Cir. 1971).

Petitioners also strongly urge that we apply to the facts of this case the rationale of the Ninth Circuit's holding in *Frank v. United States*, 577 F.2d 93 (9th Cir. 1978), and the Commissioner's ruling in Rev. Rul. 65–224, 1965–2 C.B. 42. In the *Frank* case, an administrative aide to a U.S. Senator was permitted to deduct expenses incurred in traveling extensively to report to the Senator on various problem areas in the world at large. In *Frank*, as in the case before us, the IRS did not question the reasonableness of the expenses. However, *unlike* the case before us, the IRS in *Frank* did accept the travel expenses "as accurate and as necessary to the performance of [the taxpayer's] duties." On this posture of the case, the Circuit Court agreed with the holding of the District Court that the amounts expended while the taxpayer worked for the Senator as a member of the Senate staff were ordinary and necessary business expenses under section 162(a)(2) because they were traveling expenses, incurred while taxpayer was away from home and while he was in pursuit of a trade or business as defined in section 7701(a)(26).[5]

In Rev. Rul. 65–224, *supra*, the Commissioner ruled that "the reasonable ordinary and necessary expenses incurred by a State legislator in making an investigation to ascertain facts which resulted in a legislative proposal and enactment are deductible as business expenses."

Petitioners also cite Rev. Rul. 59–316, 1959–2 C.B. 57, for the proposition that, to quote petitioners' brief, "the expenses incurred in attending a convention or meeting in connection with the taxpayer's business interest are deductible." The Commissioner takes the position in the ruling that—

The allowance of deductions for convention expenses as business expenses will depend upon whether the relationship between the taxpayer's trade or

---

[5]The Government had argued that the taxpayer should be barred from deducting his expenses as a member of the Senate staff because he did not engage in that activity for profit, an argument rejected by the Court. *Frank v. United States*, 577 F.2d 93, 94 (9th Cir. 1978).

business and his attendance at the convention is such that by his attendance he is benefiting or advancing the interests of his trade or business.

One method of determining whether such a relationship exists is to compare the individual's duties and responsibilities of his own position with the purpose of the meeting as shown by the program or agenda. If personal and business purposes are both involved, a proper allocation must be made in accordance with section 1.162–2(b) of the Income Tax Regulations. [1959–2 C.B. at 58–59.]

Basically, respondent's position is that petitioner's activities, both with respect to the Democratic National Convention and the National Black Political Conference, were political in nature and not sufficiently related to his congressional functions so as to render them deductible.

---

We think petitioners have failed to show that the expenses for which deduction is sought are so directly related to the functions of the Office of Congressman as to permit the allowance of the deduction. With regard to the Democratic National Convention, the very raison d'etre for holding the convention was to convene a meeting of the delegates for the purpose of formulating a platform and selecting candidates for the Offices of President and Vice President. Such an assemblage is quintessentially political. While petitioners concede, sub silentio perhaps, that this is so, they nevertheless urge that the Congressman participated qua Congressman rather than as a delegate per se. We have found as a fact that petitioner was an official delegate to the convention and as such he of course was privileged to participate in and vote upon the candidate selections and formulation of a party platform.

Petitioner testified at some length as to the investigative and collating-of-views activities relating to the interests of minority citizens, which included many of his congressional constituents, in which he engaged at the convention. However, as petitioner's testimony makes clear, the Platform Committee, on which he served as a delegate and not in his official capacity as a Congressman, "in essence, is the repository for prospective legislation *that would engage the party* at the national level." Petitioner, as "principal host" to the minority groups, participated in various discussions and strategies to try to achieve a favorable response to the petitions of the minority groups before the Platform Committee, the Credentials Committee, and the

Rules Committee. The agenda which had been previously formulated by the National Black Political Conference was presented to the Platform Committee as a part of the minority group's aforementioned strategy which it, in turn, hoped and expected would become a part of the national party's strategy—clearly a political goal.

Petitioners' argument that the foregoing constitute "business" activities on the Congressman's part must furthermore fail on two counts: they were not undertaken in direct connection with submissions to committees or individual Members of Congress, and they were not engaged in with respect to any specific legislation or proposed legislation. A laundry list of general objectives, such as the aforementioned agenda represented, does not meet the test of "bills and resolutions" and "proposals for legislative action submitted to the legislative body" contained in section 1.162–20(c)(2)(ii)(a), Income Tax Regs., and the House report, noted above, from which the regulation obviously stems. In light of the committee report's expression of congressional intent on this point, the regulation is a reasonable and therefore valid interpretation and application of the provisions of section 162(e)(1)(A), which deals with appearances before legislative bodies.

While petitioners might also argue that section 162(e)(1)(B) (relating to communications between a taxpayer and an organization of which he is a member) would permit the deduction, such an argument again must fail for the reason that the communication must relate to specific legislation. The regulation referred to above is of equal application to "communications" under section 162(e)(1)(B). The communications to and from the Democratic National Convention and its committees and petitioner and his clients were far more directly related to the formulation of party strategy than they were to any specific legislation to be proposed or under consideration by Congress, and therefore were essentially unrelated to the functions of petitioner's Office as Congressman.

Petitioners' reliance upon the *Frank* case, *supra*, is misplaced. The principal issue there was not whether the taxpayer's investigative activities constituted a trade or business but rather whether he engaged in his activities as a member of the Senate staff for profit. As already noted, in *Frank*, the Government questioned neither the reasonableness nor the necessity of the

claimed expenses. Since the question of whether a public servant must exhibit a profit motive for his activities is not a question in the case before us, the decision in *Frank* is not apposite.

Nor can petitioners rely on Rev. Rul. 65–224, *supra*. The ruling involved the case of a State legislator who, after taking office, initiated an investigation into leasing agreements for certain parcels of State-owned lands. The facts stated in the ruling make it clear that disclosures made by the taxpayer from information obtained in his investigation resulted in a legislative inquiry and the enactment of legislation introduced by him relating to negotiations of agreements to lease State-owned lands. Petitioners have nowhere shown that any investigations by the Congressman in connection with the activities for which he is claiming deductions lead to any specific legislation or proposals therefor. We reiterate that the above-quoted House report pinpoints the legislative intent that the expenses must be incurred in connection with specific legislation or proposals for legislation. This test is simply not met by petitioner's activities in the case before us.

Neither the *Hitchcock* nor the *Stratton* case, *supra*, involving as they do the question of the deductibility of travel expenses incurred by Foreign Service officers while traveling on vacation in the United States, are at all apposite to the Congressman's travel expenses here. Petitioners make no effort to analogize these cases to their situation beyond making the flat assertion that "the expenditures were in the pursuit of their trade or business." Petitioners have failed to establish the nexus between the Foreign Service officers' cases and the one before us.

We accordingly conclude that petitioner's travel expenses incurred in connection with his attendance at the Democratic National Convention must fail as deductions for two reasons. Primarily, because his activities there, commendable as they might have been, were essentially political in nature and not sufficiently related to the functions of his Office as Congressman; i.e., his trade or business.

Secondarily, since petitioner has failed to meet the threshold test of showing that the expenses incurred were incurred in connection with petitioner's trade or business, they cannot be allowed as expenses incurred in connection with appearances, etc., with respect to legislation under section 162(e). Allowance

of deductions under that section presupposes a trade or business connection with the expenses.

Petitioner's expenses incurred in connection with the National Black Political Conference are, for the same reasons, nondeductible. Petitioner, in his testimony, expressly emphasized the political purpose of this organization and insisted that it developed its agenda for the purpose of influencing the party platform of the Democratic National Party and, to an apparently lesser extent, the Republican National Party. If anything, the nature of the National Black Political Conference rendered petitioner's activities there one step closer to grass root campaigning and one step further removed from the functions of his public office.

For the foregoing reasons, we hold that petitioner's travel expenses paid or incurred in connection with his attendance at the Democratic National Convention or the National Black Political Conference are not deductible under section 162(a) as ordinary and necessary expenses paid or incurred in the performance of his public office as a Congressman or under section 162(e) in connection with appearances, etc., with respect to legislation.

To reflect the foregoing and concessions by the parties,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

TANNENWALD, *J.*, concurring: I append my views because I think it advisable, in cases such as the instant one, expressly to take cognizance of the public policy aspects involved. In so stating, I am quite aware that it is not within the competence of the judiciary to develop the policy foundation for the tax consequences flowing from a particular set of circumstances. To do so would blur the line between the proper roles of the judicial and legislative branches of our Government. Nonetheless, it is clear that the expenses involved herein "are an inextricable part of the election process—one of the most sensitive elements in the fabric of the democratic way of life." See *Nichols v. Commissioner*, 60 T.C. 236, 239 (1973), affd. per curiam 511 F.2d 618 (5th Cir.), cert. denied 423 U.S. 912 (1975). See also *McDonald v.*

*Commissioner*, 323 U.S. 57, 62–64 (1944) (Justice Frankfurter) (4–1–4 decision). Surely, there can be no question that party conventions are part of that process, and, in the context of the real world, I think the same is true of the National Black Political Conference (or, for that matter, any other comparable conference or organization, irrespective of the definitional terms of its membership), although admittedly the involvement of the latter in the election process is less direct. Granted that both the convention and the conference afforded petitioner "educational" opportunities related to his congressional duties, they also constituted an important element in enabling him to enhance his ability to be reelected to office.

The history of the treatment of campaign and other expenses relating to the election process and other activities designed to influence elected legislative bodies, culminating in the enactment of section 162(e), has been long and consistently restrictive. See *McDonald v. Commissioner, supra* at 62–63. What is at least as significant is the fact that the judicial approach to the treatment of such expenses has recognized the potential for unconstitutional discrimination between those officials seeking reelection and those seeking to be elected for the first time, (see *McDonald v. Commissioner, supra* at 63–64), or between candidates having different financial capabilities. (*Bullock v. Carter*, 405 U.S. 134 (1972)).

I am fully cognizant that the determination of what constitutes an "ordinary and necessary" business expense within the meaning of section 162(a) generally turns upon whether it is considered to be "appropriate and helpful." *Commissioner v. Tellier*, 383 U.S. 687, 689 (1966). Absent the overriding and, to my mind, limiting circumstances herein, it would not be difficult to conclude that the "appropriate and helpful" standard has been met. But given the circumstances previously outlined, I think it entirely appropriate not to apply that standard herein and to stay our hand until such time as an explicit legislative mandate is forthcoming—a mandate which undoubtedly would take into account any constitutional limitations. See *Nichols v. Commissioner, supra* at 239; cf. *Carey v. Commissioner*, 56 T.C. 477 (1971), affd. per curiam 460 F.2d 1259 (4th Cir.), cert. denied 409 U.S. 990 (1972). See also *Califano v. Yamasaki*, 442 U.S. 682, 693 (1979) (Federal statutes should be interpreted to avoid

constitutional questions); *Lucas v. Alexander*, 279 U.S. 573, 577 (1929) (same).

PARKER and EKMAN, *JJ.*, agree with this concurring opinion.

FAY, *J.*, dissenting: I dissent from the majority's conclusion petitioner was not able to deduct expenses he incurred in 1972 traveling to the Democratic National Convention and to various meetings of the National Black Political Conference. I believe petitioner's expenses connected with both conventions were ordinary and necessary expenses incurred in his trade or business.

The majority essentially adopts respondent's position these expenses were "political in nature," without clearly stating just what that means. The truth of the matter is that the term "political" describes many things. Petitioner was a Member of the U.S. House of Representatives. The term "political" describes petitioner's activities as a legislator, as a policymaker, as the representative of his constituents, as a candidate, and as a member of his political party. Together, all of these activities made up petitioner's "trade or business." However, because these different roles have different tax consequences, each may be considered as a separate "trade or business" for tax purposes.

The Supreme Court adopted this approach in *McDonald v. Commissioner*, 323 U.S. 57 (1944). In *McDonald*, the taxpayer ran for reelection as a judge. He paid $8,000 to his political party as "an assessment" in return for the party's support and incurred some $5,000 of customary campaign expenses. Denying the deductibility of these expenditures, the Supreme Court distinguished the taxpayer's dual roles as an elected official and as a candidate, treating each as a separate job: "He could * * * deduct all expenses that related to the discharge of his functions as a judge. But his campaign contributions were not expenses incurred in being a judge but in trying to be a judge for the next ten years." (323 U.S. at 60.) The Court went on to hold that, in light of the complex public policy issues involved, the deduction of campaign expenses should not be allowed absent a specific directive from Congress. The case also suggests, in dicta, that payments made purely to support one's political party should be treated in the same way as campaign expenses. 323 U.S. at 60.

By its silence, Congress has long since acquiesced in the result of *McDonald*, and it is now beyond question that campaign expenses are not deductible. *Martino v. Commissioner*, 62 T.C. 840 (1974); *Nichols v. Commissioner*, 60 T.C. 236 (1973), affd. per curiam 511 F.2d 618 (5th Cir.), cert. denied 423 U.S. 912 (1975). Since, however, *McDonald* makes it clear politicians wear many hats, the above analysis does not resolve the case at bar.

Petitioner attended two conventions. Section 1.162–2(d), Income Tax Regs., provides:

The allowance of deductions for such expenses ["expenses paid or incurred by a taxpayer in attending a convention"] will depend upon whether there is a sufficient relationship between the taxpayer's trade or business and his attendance at the convention or other meeting so that he is benefiting or advancing the interests of his trade or business by such attendance. If the convention is for political, social or other purposes unrelated to the taxpayer's trade or business, the expenses are not deductible.[1]

Thus, the issue is whether attendance at a convention furthers the taxpayer's trade or business. As noted by the majority, the second sentence of the regulation quoted above in no way denies deductions for political conventions per se; the sentence merely restates the requirement that attendance advance the taxpayer's trade or business. Majority opinion, *supra* at 892; see *Darling v. Commissioner*, 4 B.T.A. 499 (1926).

Accordingly, resolution of the issue presented in this case depends upon what petitioner actually tried to accomplish by attending the Democratic National Convention and the National Black Political Conference. If petitioner was pursuing legislative aims, his expenses were incurred in his trade or business as a legislator and were therefore deductible.[2] If, on the other hand, petitioner's primary purpose was to advance his own political career or to enhance the electoral prospects of his party, then his expenses would be campaign related and nondeductible. It is

---

[1]Accord, majority opinion, *supra* at 892; Rev. Rul. 59–316, 1959–2 C.B. 57, clarified Rev. Rul. 63–266, 1963–2 C.B. 88; *Reed v. Commissioner*, 35 T.C. 199, 202 (1960); *Ellis v. Commissioner*, 15 B.T.A. 1075 (1929), affd. 50 F.2d 343 (D.C. Cir. 1931); *Shutter v. Commissioner*, 2 B.T.A. 23 (1925). See *Coughlin v. Commissioner*, 203 F.2d 307 (2d Cir. 1953), revg. 18 T.C. 528 (1952).

[2]"Respondent does not dispute the fact that travel expenses incurred by an elected legislator to attend certain meetings with constituents for the purpose of gathering information with respect to pending legislation would be within the performance of his duties as a legislator, and as such, would be deductible as ordinary and necessary business expenses." Respondent's Reply Brief at 5. See Rev. Rul. 65–224, 1965–2 C.B. 42 (State legislator's expenses in connection with proposed legislation were deductible).

important to recognize that petitioner's attendance at the Democratic National Convention as a delegate is not determinative. In Rev. Rul. 59–316, 1959–2 C.B. 57, respondent expressly stated his position that—

> An individual who can bring his case within the provisions of section 162(a) of the Code by making a factual showing that he attended the convention in connection with his own business interests and is, therefore, entitled to a business expense deduction *is not deprived of the deduction in the event he should be elected or appointed a delegate and, thus, as an incident of such attendance, serves the organization electing or appointing him.* [1959–2 C.B. at 58. Emphasis added.]

In short, the question is not whether political conventions are "political"—the relevant issue is what was *petitioner* doing there.

Moreover, this is precisely the way in which respondent analyzed this issue in Rev. Rul. 76–64, 1976–1 C.B. 45, which deals with a "Legislator's expenses of attending political convention." The taxpayer therein was an elected legislator attending his political party's biennial convention as a participant on a panel concerning law enforcement. Respondent discussed the issue as follows:

> In the instant case, the primary purpose of the convention was to plan strategy and advance the political programs of the party. Thus, the legislator's attendance at the convention as a participant on the law enforcement panel was related to the formulation of the political party's policy on specific issues and not directly connected with the taxpayer's business as a legislator.

The salient factor relied upon above is not the "political" nature of the convention. The ruling focuses on the purpose of the legislator's participation. If he had been doing something else, the result presumably could have been different.

All of the facts found by the majority in the instant case lead me to conclude petitioner was pursuing legislative goals at both conventions he attended. The purpose of the National Black Political Conference was "to make an assessment of the concerns of black citizens in the United States and to develop a national black agenda regarding those concerns." Majority opinion, *supra* at 889, 896. Petitioner testified that the national black agenda was used as a basis for legislation by the Congressional Black Caucus. The agenda was presented to the Platform Committees of both major political parties. In other words, the National Black Political Conference wanted its agenda to be part of the

platform of *whichever party won*. Clearly, the objective was to commit both parties to minority legislative goals—not to support either party in the general election. Therefore, to my mind, petitioner's participation as one of the co-conveners of the National Black Political Conference was directly related to his trade or business as a legislator. Indeed, promoting minority interests was particularly appropriate for petitioner, in light of both his constituency and his position in the House as its senior black Member.

Although the situation is somewhat more complex, I would reach the same result with respect to petitioner's expenses for attending the Democratic National Convention. Under section 1.162–2(b), Income Tax Regs., traveling expenses "are deductible only if the trip is related *primarily* to the taxpayer's trade or business." (Emphasis added.) Thus, petitioner was entitled to deduct all of his traveling expenses if his primary purpose was related to his trade or business of representing his constituents as a legislator. I agree with respondent that the purpose of the 1972 Democratic National Convention was to nominate and to showcase for the upcoming election the party's Presidential and Vice Presidential candidates. But the issue in this case concerns the nature of *petitioner's* involvement. Petitioner's primary role was to represent the interests of minorities at the convention. Petitioner appeared before the Platform Committee to support the agenda published by the National Black Political Conference. Respondent admits on brief, "As a result of the taxpayer's activities at these conventions and meetings, particular planks in the 1972 Democratic Party platform were adopted." Respondent's Brief at 13. I think it is beyond serious dispute that party platforms, despite their "political" nature, have a fundamental role in the legislative process. Moreover, as noted above, the National Black Political Conference wanted its agenda incorporated in *both* party platforms. I would therefore conclude that *petitioner's* primary purpose at the Democratic National Convention was directly related to his trade or business.

Finally, I do not see that section 162(e), I.R.C. 1954, or the regulations thereunder have anything to do with the issues presented herein. Section 162(e) deals with lobbying expenses, that is, appearances before or submissions to a committee or Member of Congress or other legislative body in connection with legislation or proposed legislation of interest to the taxpayer.

However, petitioner was not appearing before a legislator; he was a legislator. The issue is not whether proposed legislation was of direct interest to petitioner's trade or business; proposing legislation was his trade or business. Nothing in the legislative history of section 162(e), or, frankly, the majority opinion gives the slightest indication that the section applies to the expenses of an elected legislator. Indeed, if petitioner's activities at the conventions could somehow be treated as "appearances with respect to legislation," it would seem to follow that petitioner was pursuing legislative goals in his trade or business, and not just party politics.

I believe the majority has erroneously denied petitioner the deduction of expenses incurred by him in the course of formulating, proposing, and enacting legislation. As I have indicated, I think the majority went astray by failing to examine critically the term "political." The result reached by the majority, that all "political" expenses are nondeductible, seems to me to run counter to both commonsense and the express statutory mandate of section 7701(a)(26), which provides that holding public office is a "trade or business."

WILBUR, *J.*, agrees with this dissenting opinion.

CHABOT, *J.*, dissenting: In 1972, the year to which the issues before us relate, petitioner Charles C. Diggs, Jr. (hereinafter sometimes referred to as Diggs), was a Member of Congress—in particular, he represented the Thirteenth Congressional District of Michigan in the House of Representatives. The issues before us relate to expenses paid by Diggs in connection with his attendance that year at meetings of the National Black Political Conference and his attendance at the Democratic National Convention.

The majority hold that both categories of Diggs' expenses are nondeductible because Diggs' activities at the meetings and the convention "were essentially political in nature" and because they were "not sufficiently related to the functions of his Office as Congressman." Majority opinion, *supra* at 900.

I would hold that Diggs' expenses in connection with his attendance at the meetings of the National Black Political Conference are deductible as ordinary and necessary expenses of

his trade or business as a Member of Congress. I would hold that Diggs' expenses in connection with his attendance at the Democratic National Convention are nondeductible because petitioners have failed to show that such attendance was not inextricably intertwined with political campaigns on behalf of candidates for public office, following *McDonald v. Commissioner*, 323 U.S. 57 (1944), and its progeny. I would reject the test of whether the activities were "essentially political in nature." As a result, I respectfully dissent.

## *I. In General*

Diggs' work as a Member of Congress in 1972 constituted a trade or business (sec. 7701(a)(26)[1] ), the ordinary and necessary expenses of which are deductible (sec. 162(a)[2] ).

The nature of this trade or business may be gleaned from an inspection of Article I of the U.S. Constitution. The breadth of the subjects dealt with in this trade or business is largely set forth in the imposing list of clauses in section 8 of this article. In aid of its legislative function, the Congress has the power to inquire, and to force compliance with its inquiries. See Congressional Research Service of the Library of Congress, The Constitution of the United States of America: Analysis and Interpretation, S. Doc. 92–82, pp. 79–96 (1973), and materials cited therein.

I have found no legal imperative forbidding individual Members from learning about the problems or concerns of their constituents or others; such efforts by a Member may constitute activities conducted in the course of the Member's trade or business qua Member. Indeed, we have recently held that it is part of the trade or business of a State legislator to discuss the issues with, and ascertain the needs of, the voters in his district. *Chappie v. Commissioner*, 73 T.C. 823, 833 (1980).

In *McDonald v. Commissioner*, *supra*, the Supreme Court

---

[1]SEC. 7701. DEFINITIONS.

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\*  \*  \*  \*  \*  \*  \*

(26) Trade or business.—The term "trade or business" includes the performance of the functions of a public office.

[2]SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) In General.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, \* \* \*

declared that expenses of an officeholder (a Pennsylvania State judge) in seeking reelection[3] were not expenses of the officeholder's trade or business under section 23(a)(1)(A) of the Internal Revenue Code of 1939 (the predecessor of sec. 162(a)). The Court drew a distinction between "expenses incurred in being a judge" and expenses incurred "in trying to be a judge for the next ten years." (323 U.S. at 60.)[4]

We may take it that performance of the functions of one's public office is apt to affect one's likelihood of reelection, especially where the officeholder seeking reelection must face the voters' verdict every 2 years (U.S. Const. art. I, sec. 2). Nevertheless, it is clear that the mere fact of the next reelection campaign does not operate to automatically disallow deductibility of expenses of a legislator. E.g., *Chappie v. Commissioner, supra.*

## II. National Black Political Conference

The parties have stipulated that Diggs attended 10 meetings of the National Black Political Conference in 1972. Only the first of these meetings (in Muskegon Heights on Feb. 20, 1972) was held in Michigan, the State from which Diggs was elected and in which Diggs ran for reelection in 1972. The majority have found that this organization's assembly was held in Gary, Ind., on March 10 through 13, 1972, and that, of the other eight meetings, five were held in Illinois and one each in Ohio, New York, and Nevada. The majority have found that "One of the reasons [Diggs] attended meetings of the National Black Political Conference was to make an assessment of the concerns of black citizens in the United States and to develop a national black agenda regarding those concerns." (Majority opinion, *supra* at 889.) The agenda thus developed was presented to the Platform Committees of both the Democratic and the Republican National Conventions in 1972. The majority have not made any finding as

---

[3]As the Court pointed out (323 U.S. 57, 64 n. 6 (1944)), McDonald was holding his office temporarily by appointment; he was a candidate for election for the first time and arguably not a candidate for reelection.

[4]Although there was no majority opinion in *McDonald v. Commissioner, supra,* none of the opinions disputed the nondeductibility of the expenses under the predecessor of sec. 162(a). The four dissenters in *McDonald* maintained the expenses were deductible under the predecessor of sec. 212(1). This latter contention is not before us in the instant case.

to any other reasons Diggs might have had for attending the meetings of the National Black Political Conference in 1972.

Investigation of problems faced by people, examination of ways of meeting such problems, identification of those aspects of solutions that may usefully be pursued through the body politic, and education of colleagues and potential colleagues as to such problems and solutions (especially those that would involve the Congress taking or avoiding certain actions)—these fairly describe the constitutional role of a Member of Congress. See *Chappie v. Commissioner, supra.* On the record before us in the instant case, the foregoing fairly describes the activities of Diggs with respect to the National Black Political Conference. Nothing in the majority's findings leads to the conclusion that these activities were so tied up with Diggs' efforts at reelection that the expenses of these activities should fall under the *McDonald* doctrine of nondeductibility. See *Chappie v. Commissioner, supra.* I would hold that petitioners are entitled to deduct the $1,303 that Diggs spent in 1972 for attendance at meetings of the National Black Political Conference.

### III. Democratic National Convention

Diggs' attendance at the Democratic National Convention from July 7 through 15, 1972, must be viewed in a different light. This convention selected the Democratic Party's nominees for President and Vice President in the election to be held less than 4 months later.[5] The convention also adopted a party platform, a program intimately connected with the then-upcoming election. Such a national platform, although tied most closely to a party's nominees for President and Vice President, also is part of the picture in the election campaigns of that party's nominees for the other national offices—Members of the U.S. Congress.

The majority have found that Diggs was a voting delegate to the 1972 Democratic National Convention and that he "played a significant role" there. The news media of the Nation focused on the convention. The context of the convention was the then-upcoming election of our National Government. It is difficult to

---

[5]The subsequent replacement of the nominee for Vice President does not alter the focus of this Democratic National Convention.

imagine how a candidate for election to the U.S. Congress in 1972 could participate officially and "play a significant role" in the 1972 National Convention of his or her party without such activities being inextricably intertwined with his or her election campaign. Petitioners have not shown any subordination of Diggs' role as a candidate, or any predominance of his trade or business as a Member of Congress, or any way in which we could allocate the $1,083 he spent to attend the 1972 Democratic National Convention between his candidacy and his trade or business. I agree with the majority that petitioners are not entitled to deduct this amount.

## IV. "Political" Activities

The majority dispose of petitioners' contentions by describing Diggs' activities, the deductibility of the expenses of which are here in dispute, as "political." Respectfully, I submit that the unadorned label "political" is neither a useful tool in analysis nor even a convenient conclusory label.

The adjective "political" has a number of accepted meanings, among them the following: (1) Of or pertaining to Government, (2) having a settled system of administration, (3) of or pertaining to the system by which the individuals of a State seek to control the State's public policy, and (4) of or pertaining to those who make a business or profession of politics (Webster's New International Dictionary 1909 (2d ed. 1959)). The term also has taken on many nuances that vary from context to context.

The Congress has used the term "political" in section 162(e)(2)(A), as follows:

(2) LIMITATION.—The provisions of paragraph (1) [which allow deduction of certain lobbying expenses] shall not be construed as allowing the deduction of any amount paid or incurred (whether by way of contribution, gift, or otherwise)—

(A) for participation in, or intervention in, *any political campaign on behalf of any candidate for public office* * * * [Emphasis supplied.]

The emphasized language was previously enacted in 1954 as part of section 501(c)(3). The language also appears in section 170(c)(2)(D) and cognate deduction provisions (secs. 2055(a), 2106(a)(2)(A), 2522(a)(2), and 2522(b)).

In each of these provisions, the Congress' use of the term "political" helps to focus on a limited type of activity. In none of these provisions is the essentially unadorned adjective the basis

of a sweeping malediction. The use of the term in the majority's opinion, *supra*, stands in sharp contrast to the Congress' use in the Internal Revenue Code.

The majority warn that we must not "blur the line of distinction between petitioner's respective positions as a political figure and as a Member of Congress." Majority opinion, *supra* at 892. Every Member of Congress is a "political figure" in almost any sense of the term. To paraphrase the majority, Members of Congress are quintessentially political figures. Diggs' activities here in dispute were political in almost any sense of the term. Every trade or business activity of a Member of Congress is political in almost any sense of the term, yet both the majority herein and respondent concede that a Member of Congress may have deductible expenses of his or her trade or business as a Member. Majority opinion, *supra* at 892. See Rev. Rul. 76–276, 1976–2 C.B. 14; Rev. Rul. 73–356, 1973–2 C.B. 31; Rev. Rul. 65–224, 1965–2 C.B. 42.

The majority's use of "political" as a test for disallowance of deduction is unfounded in the statute; it neither provides a clue to the decision of future cases nor does it explain the holdings of the instant case; it is wrong.

## V. Section 162(e)

The majority engage in an extensive discussion of section 162(e), a provision enacted by section 3(a) of the Revenue Act of 1962, Pub. L. 87–834, 76 Stat. 973, as a reaction to the Supreme Court's decision in *Cammarano v. United States*, 358 U.S. 498 (1959), and to the regulations issued by the Treasury Department later in 1959. H. Rept. 87–1447, pp. 16–17, 1962–3 C.B. 402, 420–421; S. Rept. 87–1881, pp. 21–23, 1962–3 C.B. 703, 727–729.

The majority hold that Diggs' expenses are not deductible under section 162(e) because "such expenses were not paid or incurred in [Diggs'] trade or business." Firstly, petitioners do not claim deductions under section 162(e). Secondly, expenses not paid or incurred in a taxpayer's trade or business are not deductible under section 162(a), even without regard to section 162(e). In short, section 162(e) seems to be irrelevant to the majority's conclusions.

## VI. Equal Treatment

The majority seek to distinguish Rev. Rul. 65–224, *supra*,[6] because the legislator described in this ruling was successful in securing a legislative inquiry and enactment of legislation dealing with the matters that he had investigated. In contrast, the majority state (majority opinion, *supra* at 900), "Petitioners have nowhere shown that any investigations by the Congressman in connection with the activities for which he is claiming deductions lead to any specific legislation or proposals therefor."[7]

Lack of success—or of immediate success—in one's efforts is not usually thought to automatically forbid a deduction for the expenses of these efforts. Indeed, we specifically rejected respondent's efforts to make prompt success a touchstone, where the expenses were otherwise within section 162(a) (*Cremona v. Commissioner*, 58 T.C. 219 (1972) (relating to employment agency fees where the taxpayer was unsuccessful in securing a new position)). Where we yielded to respondent's urging in holding that the costs of an unsuccessful defense in a criminal case were nondeductible even though the costs of a successful defense would have been deductible, we were brought up sharply by the Supreme Court. *Commissioner v. Tellier*, 383 U.S. 687 (1966).[8]

The ground on which the majority distinguish Rev. Rul. 65–224 from the instant case is an untenable one. In addition to being bad tax law, it is bad public policy, for it discriminates against the conscientious legislator who is in the minority at a given time and place, as compared to that legislator's colleague who carries the day in terms of enactment of a law. Too, it discriminates against the legislator whose success consists of

---

[6]Revenue rulings merely indicate the opinion or position of the Internal Revenue Service. E.g., *Browne v. Commissioner*, 73 T.C. 723, 731 (1980) (Hall, J., concurring).

[7]The majority also refer to a House report on the enactment of sec. 162(e) as imposing a requirement that "the expenses must be incurred in connection with specific legislation or proposals for legislation." That may be true of lobbying expense deductions sought as a result of the Congress' partial overruling of *Cammarano v. United States*, 358 U.S. 498 (1959), but I find it difficult to understand what sec. 162(e) has to do with expenses of a Member of Congress in investigating concerns that might or might not lead to legislation.

[8]See also *Nichols v. Commissioner*, 60 T.C. 236 (1973), affd. 511 F.2d 618 (5th Cir. 1975), where we concluded that the filing fee of the successful candidate for public office was to be treated the same as the fee of the unsuccessful candidate in *McDonald v. Commissioner, supra.*

blocking enactment of what may be a bad bill, by comparison with that legislator's colleague whose success consists of enacting a law.

Respectfully, I urge that we not ratify respondent's apparent attempt to use the tax laws to deter independent investigations by legislators who do not foresee their efforts producing prompt and favorable results.

## VII. Concurring Opinion

Judge Tannenwald, in his concurring opinion, urges us to "stay our hand" because it might be unconstitutional for us to allow any deduction to petitioners, notwithstanding his concession that petitioners may well have satisfied the requirements of the Code.

Firstly, the majority's determination to hold for respondent is no more a staying of this Court's hand than would be a holding for petitioners.

Secondly, unequal treatment under the law hardly seems to fit the prescription for constitutional prudence advocated in the concurring opinion. We have neither gathered nor been presented with information from which we could rationally decide whether the commonweal is served by denying Members of Congress deductions available to others. It is *legislative* line-drawing that will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts. *United States v. Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, 6 (1970), revg. per curiam 308 F. Supp. 761 (D. Md. 1970). The presumption of constitutionality which is particularly strong in the case of a revenue provision is a presumption of the constitutionality of an *Act of the Congress. Nicol v. Ames*, 173 U.S. 509, 514–515 (1899). The Congress has not drawn the line proposed in the concurring opinion.

Thirdly, it will be time enough to consider the impact of possible constitutional infirmities in a holding one way or the other when such constitutional problems are presented to us. E.g., *Golden Rule Church Association v. Commissioner*, 41 T.C. 719, 731 (1964). In the instant case, the parties have not raised the constitutional question.