EUGENE A. CHAPPIE AND PAULINE CHAPPIE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5616–78.     Filed February 11, 1980.

*Patrick J. Riley*, for the petitioners.
*Rebecca T. Hill*, for the respondent.

## OPINION

QUEALY, *Judge:* The respondent has determined deficiencies in the Federal income taxes of the petitioners as follows:

| Year | Deficiency |
| --- | --- |
| 1973 | $2,899.97 |
| 1974 | 2,577.72 |

After concessions by the parties, the issues which remain for determination are as follows:

(1) Whether petitioners are entitled to a deduction under section 604 of the Tax Reform Act of 1976 and section 162(a)[1] in the amount of the per diem deemed expended under section 604, or whether section 604 necessitates that petitioner be "away from home" as a prerequisite to the allowance of the deduction;

(2) Whether petitioner is entitled to a deduction under sections 604 and 162 for days spent outside the capital in the local district during which time he was not on legislative business, i.e., whether days spent outside the capital in the local district are "legislative days" under section 604.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

All of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

The petitioners, Eugene A. Chappie and Pauline Chappie, husband and wife, were legal residents of Roseville, Calif., at the time the petition herein was filed. They filed joint returns for the calendar years 1973 and 1974 with the Internal Revenue Service Center at Fresno, Calif.

Petitioner Eugene Chappie (Chappie) was initially elected as a representative to the California State Assembly during 1962. During the taxable year 1973 and until December 2, 1974, Chappie represented the Sixth Assembly District. Beginning December 2, 1974, Chappie represented the Third Assembly District.

During the taxable year 1973, until November of 1973, petitioners maintained their personal residence in Cool, Calif. Cool is within the Sixth Assembly District and is approximately 40 miles northeast of Sacramento, the State capital.

Beginning in November 1973, and continuing through 1974, petitioners maintained their personal residence in Roseville, Calif., which is in the Third Assembly District and is approximately 15 miles northeast of Sacramento.

Petitioners maintained no home within Sacramento. When Chappie spent the night in Sacramento, he stayed at his parents' home or at the home of another legislator.

The State of California pays a per diem amount to each State legislator for each day that the legislature is in session. A legislator would also receive the per diem for a legislative session day if he had previously been excused from the day's session to enable him to be elsewhere on legislative business.

The State of California pays the per diem for up to 3 days between legislative session days. As a result of this, a legislator will receive the per diem for regular weekends and for 3-day weekends when the legislature is in session. The State of California paid the per diem to all State legislators regardless of the distance of their residence from Sacramento. In fact, the per diem was paid to legislators whose personal residences were in Sacramento. The per diem paid by the State of California during 1973 and 1974 was $30 per day.

The California State Legislature normally meets Monday through Thursday from January until September. During 1973

and 1974, the legislature recessed from the end of September until the end of the year. There were recesses at Easter and for the month of July. Additionally, because 1974 was an election year, there was a 2-week recess for the primary elections. Under this schedule, the legislators received the $30 per diem for Fridays, Saturdays, and Sundays during the sessions.

During 1973, the legislature was actually in session for 125 days plus 81 intervening weekend days for a total of 206 "legislative session" days. During 1973, petitioner attended 119 legislative session days in Sacramento. Therefore, he received the $30 per diem for those 119 days plus the 81 intervening days for a total of $6,000. During 1973, Chappie stayed overnight in Sacramento on 60 legislative days. Chappie also stayed away from home overnight in parts of the district he represented for 32 nights. The parties have stipulated that the purpose of these trips to the legislative district was to become personally acquainted with constituents "primarily to be a better representative of the constituents" but also "to increase his [Chappie's] chances of re-election."

During 1974, the legislature was actually in session for 114 days plus 67 intervening weekend days for a total of 181 "legislative session" days. During 1974, Chappie attended 113 legislative session days in Sacramento. He received the $30 per diem for these 113 days plus the 67 intervening days for a total of $5,400.

During 1974, petitioner stayed overnight in Sacramento on 27 legislative days. Chappie also stayed overnight away from home in various parts of the district he represented for 15 nights. The stipulated purpose of these trips to the district was to become "personally acquainted with his [Chappie's] constituents primarily to be a better representative of his constituents" and also (and particularly in 1974), "to increase his chances of re-election."

The parties have stipulated that the trips to the legislative district did not entail official legislative business, nor were the trips made at the request of the legislature.

For the remainder of the legislative days, petitioner commuted home to Cool (during 1973) or to Roseville (during December 1973 and 1974) or stayed at his home in the event it was a legislative day when he did not attend a legislative session or stay overnight in a distant part of his district.

Petitioner did not report either the $6,000 or the $5,400 of per diem received in these 2 years. Petitioners now concede that these amounts should have been reported as income but argue that a portion of these amounts was deductible pursuant to section 604 of the Tax Reform Act of 1976.

Petitioners made the election under section 604 to have their "tax home" in their congressional district, i.e., Cool and then Roseville.

The per diem allowable to employees of the executive branch of the Federal Government while away from home during 1973 and 1974 was $25 per day. Petitioners concede the $5 per day received in excess of the $25 per diem deemed expended under section 604 is not deductible.

Petitioners have no records of expenses incurred while away from home during the tax years at issue.

Section 604 was added to the 1954 Internal Revenue Code by the Tax Reform Act of 1976.[2] The section provides:

(a) IN GENERAL.—For purposes of section 162(a) of the Internal Revenue Code of 1954, in the case of any individual who was a State legislator at any time during any taxable year beginning before January 1, 1976, and who elects the application of this section, for any period during such a taxable year in which he was a State legislator—

(1) the place of residence of such individual within the legislative district which he represented shall be considered his home, and

(2) he shall be deemed to have expended for living expenses (in connection with his trade or business as a legislator) an amount equal to the sum of the amounts determined by multiplying each legislative day of such individual during the taxable year by the amount generally allowable with respect to such day to employees of the executive branch of the Federal Government for per diem while away from home but serving in the United States.

(b) LEGISLATIVE DAYS.—For purposes of subsection (a), a legislative day during any taxable year for any individual shall be any day during such year on which (1) the legislature was in session (including any day in which the legislature was not in session for a period of 4 consecutive days or less), or (2) the legislature was not in session but the physical presence of the individual was formally recorded at a meeting of a committee of such legislature.

(c) LIMITATION.—The amount taken into account as living expenses attributable to a trade or business as a State legislator for any taxable year under an

---

[2]Pub. L. 94–455, 90 Stat. 1520, 1575, enacted on Oct. 4, 1976. The original provision applied to all taxable years beginning before Jan. 1, 1976, for which the period for assessing or collecting a deficiency had not expired before the date of the enactment of the Tax Reform Act. This section has been amended by sec. 307 of Pub. L. 95–30, 91 Stat. 153, May 23, 1977, and sec. 2 of Pub. L. 95–258, 92 Stat. 195, Apr. 7, 1978. These amendments extended the original provision adopted by the Tax Reform Act of 1976 for 1 year each to taxable years beginning before Jan. 1, 1977, and to taxable years beginning before Jan. 1, 1978.

election made under this section shall not exceed the amount claimed for such purpose under a return (or amended return) filed before May 21, 1976.

(d) MAKING AND EFFECT OF ELECTION.—An election under this section shall be made at such time and in such manner as the Secretary of the Treasury or his delegate shall by regulations prescribe. Any such election shall apply to all taxable years beginning before January 1, 1976, for which the period for assessing or collecting a deficiency has not expired before the date of the enactment of this Act.

For the State legislator who elects application of this provision, the place of residence within the legislative district which he represents shall be considered his tax home. Additionally, he shall be deemed to have expended a prescribed amount as living expenses during "legislative days."

Petitioner has raised the question of whether the amount of per diem shall be deemed to have been expended only when the State legislator is away from his home, i.e., the tax home elected under section 604 within the legislative district he represents. Also at issue is the question of what constitutes a "legislative day" under section 604.

Petitioner contends that the "away from home" requirements of section 162 are not incorporated in section 604, but rather that the phrase is used merely to describe the amount of per diem deemed expended under the statute.

Petitioner further argues that once a taxpayer elects the application of the statute, he "shall" be deemed to have expended the amount of per diem as his living expenses provided that per diem does not exceed Federal allowances. Petitioner argues that the statute contains no contingencies or exceptions to this rule once the election is made.

Petitioner therefore argues that he is entitled to a deduction under the statute in the amount of $5,000 for the year 1973 and $4,500 for the year 1974.

Section 604 was enacted to alleviate the uncertainty under former law with respect to the tax home of State legislators. A deduction under section 162(a) has always been permitted to legislators (as well as to all other taxpayers) for traveling expenses (including amounts expended for meals and lodging) while away from home in pursuit of a trade or business. No deductions are permitted under this provision for personal, living, and family expenses. Sec. 262.

Because deductions under section 162(a) were permitted only while "away from home," the determination of the tax home of

a taxpayer was crucial. Prior law determined the tax home of a legislator by taking into account a number of facts and circumstances, such as: (a) the total time ordinarily spent by the taxpayer at each location, (b) the degree of business activity at each location, and (c) the amount of income ordinarily earned by the taxpayer at each location. Additional factors of a similar nature could be taken into consideration, such as the significant contacts of the taxpayer at each location. Since each case was determined separately under this facts and circumstances test, there was no certainty for legislators as to what would be determined to be their tax home and their resulting "away from home" deductions. See H. Rept. 658, 94th Cong., 1st Sess. 179 (1975).[3] To make matters worse, the Internal Revenue Service would not issue an advance ruling on the question of an individual legislator's tax home. See H. Rept. 658, 94th Cong., 1st Sess. 179 (1975), and S. Rept. 938, 94th Cong., 2d Sess. 166 (1976).

The sessions of many legislatures had become substantially lengthened requiring members to spend substantial portions of each year in the State capital. Many State legislatures began to provide a per diem for each day a legislator was in attendance at a session of the legislature; therefore, the determination of a legislator's tax home became crucial to the determination of whether that legislator would be eligible for an away from home deduction for his traveling expenses while at the State capital.

Many State legislators had been treating their residences in the districts they represented as their tax homes. Thus, they would deduct the living expenses incurred in connection with the time spent at the State capital.

At the time section 604 of the Tax Reform Act of 1976 was enacted, the Internal Revenue Service was challenging these deductions and proceeding to determine the tax home of State legislators on a case-by-case basis. See S. Rept. 938, 94th Cong., 2d Sess. 166 (1976). If a finding was made that the legislator's tax home was the State capital, deductions taken for living expenses incurred in connection with the time spent at the State

---

[3] There was also confusion in the courts regarding the tax home of State legislators. See *Montgomery v. Commissioner*, 532 F.2d 1088 (6th Cir. 1976), affg 64 T.C. 175 (1975). Petitioner therein was a member of the Michigan legislature who spent most of his time in the State capital. His tax home was found to be at the State capital. This case was cited during hearings on the proposed sec. 604 of the Tax Reform Act of 1976 as an example of the problem facing legislators. Per diem payments received by the legislator would, based upon a finding that his tax home was the State capital, be classified as compensation, rather than living expense reimbursement.

capital were disallowed. This theoretically would have permitted the legislator to take a deduction for living expenses incurred in the district the State legislator represented. However, because taxpayers had relied upon prior practice, many were unable to substantiate the expenses incurred in their districts. Congress sought a way to provide consistency in the tax treatment received by State legislators.

The location of a Federal legislator's tax home was first provided for in an amendment to section 23(a)(1)(A) of the Internal Revenue Code of 1939 (currently sec. 162(a)). Under that amendment,[4] the place of residence of the Member of Congress within the State, congressional district, or possession which he represented was considered his home.[5] Members of Congress were permitted to deduct amounts up to $3,000 expended for living expenses while away from that tax home.

Section 604 was an attempt to put State legislators on an equal footing with Members of Congress. It is therefore important to examine the addition to section 162(a) originally made in 1952. Section 23(a)(1)(A) of the 1939 Internal Revenue Code permitted all taxpayers to deduct, from gross income, travel expenses incurred while away from home in the pursuit of a trade or business. However, this deduction was contingent on the definition of the term "home." The Tax Court had held that the home of a Member of Congress for tax purposes was the District of Columbia[6] on the theory that this is the business location of the Members of Congress. Based upon this determi-

---

[4]Enacted as part of Pub. L. 471, ch. 598, 66 Stat. 467, July 9, 1952.

[5]SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

For purposes of the preceding sentence, the place of residence of a Member of Congress (including any Delegate and Resident Commissioner) within the State, congressional district, or possession which he represents in Congress shall be considered his home, but amounts expended by such Members within each taxable year for living expenses shall not be deductible for income tax purposes in excess of $3,000.

[6]*Lindsay v. Commissioner*, 34 B.T.A. 840 (1936).

nation, the expenses of a Member of Congress while attending a session of Congress were not deductible.

The amendment was designed to rectify this situation by providing that "home" for the purpose of the deduction for travel expenses while away from home, shall be the home maintained in the district represented by the Member of Congress. This amendment was felt to be the best way to provide an equitable, uniform rule for all Members of Congress. By legislatively determining their tax home, the amendment allowed them a deduction for the expense of meals and lodging while in Washington on official business on behalf of their constituents.[7]

When section 162(a) was amended to decide the issue of the tax home of Members of Congress, the only reason there was a need to settle that question was to enable Members of Congress to take deductions for travel away from that home.

All deductions are a matter of legislative grace. A taxpayer seeking a deduction must be able to show that he comes within the express provisions of the statute. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

Section 162(a)(2) permits the deduction of "traveling expenses * * * while away from home in the pursuit of a trade or business." It is well settled that "away from home" includes only overnight trips or trips on which a stop for sleep or rest is required. *United States v. Correll*, 389 U.S. 299 (1967). The sleep or rest rule "is particularly aimed at formulating an objective test which will obviate individual analysis of countless factual variations." *Barry v. Commissioner*, 435 F.2d 1290, 1291 (1st Cir. 1970), affg. per curiam 54 T.C. 1210 (1970). Futhermore, the sleep or rest rule requires a stop of sufficient duration that it would normally be related to a significant increase in expenses. *Barry v. Commissioner, supra* at 1291.[8]

After the enactment of the 1952 amendment, in order for a

---

[7]*Lindsay v. Commissioner, supra,* was cited in congressional discussions preceding the amendment's passage. These discussions on the floor of the House indicate that the amendment was proposed to rectify discrimination against Members of Congress by providing that "home," "for purposes of the deduction for travel expenses *while away from home,* shall be the home maintained in the district from which he is elected." (98 Cong. Rec. 5280 (1952); emphasis added.)

Clearly then, the amendment was never intended to abrogate the "away from home" prerequisite to deductibility.

[8]The Commissioner has consistently construed travel "away from home" to exclude all trips requiring neither sleep nor rest. The Commissioner's interpretation, first expressed in a 1940 ruling, I.T. 3395, 1940–2 C.B. 64, was originally known as the overnight rule.

Member of Congress to qualify for a deduction under section 162(a) for living expenses while in Washington, D.C., it was still required that he comply with the requirement of being "away from home."[9] "Away from home" expenses will always exclude commuting costs. It is settled law that commuting costs are treated as nondeductible personal expenses. Secs. 1.262–1(b)(5) and 1.162–2(e), Income Tax Regs.; *Fausner v. Commissioner*, 413 U.S. 838, 839 (1973), rehearing denied 414 U.S. 882 (1973); *Commissioner v. Flowers*, 326 U.S. 465 (1946); *Sullivan v. Commissioner*, 1 B.T.A. 93 (1924). Section 262 takes precedence over the provisions of section 162. *Sharon v. Commissioner*, 66 T.C. 515 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979).

The amendment added to section 162(a) in 1952 was not applicable to State legislators. In 1975, section 604 was referred to Congress in an attempt to provide (1) consistent treatment for State legislators with respect to the determination of their tax home and (2) to provide for a per diem amount deemed expended without substantiation during periods when the legislators were away from that tax home.

Although we have found no prior cases interpreting section 604 of the Tax Reform Act of 1976, the legislative history of section 604 indicates that the statute was intended to incorporate within it the requirement that the State legislators' expenses would be deductible only when the legislator was away from his tax home. See H. Rept. 658, 94th Cong., 1st Sess. 178 (1975); S. Rept. 938, 94th Cong., 2d Sess. 165 (1976); H. Rept. 1515, 94th Cong., 2d Sess. 60 (1976). This interpretation is also supported by the fact that section 604 was intended to provide treatment for State legislators that was similar to that provided to Members of Congress in the 1952 amendment to section 162(a).

Therefore, applying section 604, on those days when petitioner traveled to Sacramento from his home at Cool (and later Roseville) and returned to his home at night, he was essentially commuting to and from his place of employment. Under the provisions of section 262, these expenses are not deductible.

---

[9]See also H. Rept. 658, 94th Cong., 1st Sess. 179 (1975), which notes that the sec. 162 deduction would not be available to a Member of Congress who was able to commute on a daily basis from his congressional district as these expenses would be personal transportation expenses and would violate the overnight rule.

Because petitioner was not away from his home on those nights, he cannot be deemed to have expended the amount allowable as living expenses while away from home under section 604.

On those days (60 days during 1973 and 27 days during 1974) when petitioner stayed in Sacramento, away from his tax home, he shall be deemed to have expended for living expenses while away from home the amount of per diem specified in section 604(a)(2).

Next we come to the question relating to days (32 days in 1973 and 15 during 1974) when petitioner was away from home but was not in Sacramento. On those days, the parties have stipulated that Chappie was in various parts of the district he represented. The parties have also stipulated that the purpose for these trips was for Chappie to become personally acquainted with his constituents primarily to become a better representative of his constituents and secondarily (particularly during 1974, an election year) to increase his chances of reelection.

Under the statute, the legislator is deemed to have expended for living expenses the amount of per diem[10] multiplied by the number of legislative days. Section 604(b) specifies that a "legislative day" shall be one on which:

(1) the legislature was in session (including any day in which the legislature was not in session for a period of 4 consecutive days or less); or

(2) the legislature was not in session but the physical presence of the individual was formally recorded at a meeting of a committee of such legislature.

Section 604(a)(2) provides that the amount deemed expended for living expenses shall be determined by multiplying "each legislative day *of such* individual." The statute does not refer to the legislative days held by the legislature but looks instead to days of legislative participation by the legislator.

In the committee reports, the term "days of legislative participation" is used to describe the multiplier to be used in calculating the deduction under section 604. A "day of legislative participation":

includes each day that the legislator's *physical presence* is formally recorded during a meeting of the State legislature or a meeting of a committee of the

---

[10]The amount "generally allowable with respect to such day to employees of the executive branch of the Federal Government for per diem while away from home but serving in the United States."

State legislature. [H. Rept. 94–658, 94th Cong., 1st Sess. 180 (1975); S. Rept. 94–938, 94th Cong., 2d Sess. 167 (1976); emphasis added.]

While the days spent in the district constituted "legislative days" in that the legislature was in session and the petitioner was paid a per diem, he was not away from home attending either the proceedings of the State legislature or a meeting of a committee of such legislature. The days spent in the legislative district therefore failed to qualify as legislative days within the meaning of section 604(b). Nonetheless, petitioner may still be entitled to deduct the expenses incurred while away from home overnight in his legislative district under section 162(a). Rev. Rul. 79–16, 1979–1 C.B. 91.

Petitioner was in the trade or business of a State legislator. As such, his duty was to represent constituents in the State legislature. He cannot represent the constituents adequately without discussing the issues with and ascertaining the needs of the voters in his district. If the area encompassed by his district is such to require that he be away from home overnight in order to meet with the people in that district, the cost of such travel constitutes an ordinary and necessary expense of his trade or business within the meaning of section 162(a). Since the parties have agreed that a deduction of $25 per diem is a reasonable allowance for such expense, petitioner is entitled to deduct this amount for the 32 days during the taxable year 1973 and the 15 days during the taxable year 1974 when petitioner was away from home in various parts of the district he represented in order to become acquainted with his constituents.

To reflect the concessions made by the parties and the conclusion reached herein,

*Decision will be entered under Rule 155.*