JOHN D. DADY AND CAROLE DADY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dady v. Commissioner
Docket No. 13914-79.
United States Tax Court
T.C. Memo 1981-440; 1981 Tax Ct. Memo LEXIS 303; 42 T.C.M. (CCH) 781; T.C.M. (RIA) 81440; August 19, 1981. *303 Petitioner John Dady was a tugboat captain who lived in Florida due to his daughter's health, and traveled to and from his home every week to ports somewhere between Boston, Mass., and Norfolk, Va., to board and leave the boat when there were crew changes. Held: Petitioners are not entitled to deduct John's traveling expenses between his home in Florida and the various places he met the tugboat to make crew changes. Held, further: petitioners suffered a casualty loss in 1976 when a storm severely damaged a bulk-head at the rear of their property in New York. Amount of deductible loss determined. John D. Dady, pro se. Eugene Meyers, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent has determined deficiencies in, and additions to, petitioners' Federal income taxes as follows: Taxable year
Additions to tax
ended Dec. 31,
Deficiency
[1] sec. 6653(a), I.R.C. 1954 1976
$ 2,351
$ 118
1977
2,610
130
After concessions by petitioners, [2] the issues remaining for decision are: (1) Whether petitioner John *304 D. Dady's travel expenses were deductible under section 162(a)(2); (2) if so, to what extent have such expenses been substantiated as required by section 274(d); (3) whether petitioners are entitled to a casualty loss deduction under section 165(c)(3); [3] and (4) whether petitioners are liable for additions to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated *305 and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners John D. Dady and Carole Dady, husband and wife, resided in Lauderhill, Fla., at the time of filing the petitions herein and during 1976 and 1977, the taxable years in issue. They filed their joint Federal income tax returns for each of the years in issue with the Internal Revenue Service Center, Chamblee, Ga. Carole Dady is a party herein solely by virtue of filing a joint return with John D. Dady (hereinafter petitioner). Away-from-home expenses
Petitioner is a tugboat captain and has been licensed as such by the U.S. Coast Guard since 1960. Since 1971, through and including the taxable years in issue, petitioner was employed as a tugboat captain by McAllister Brothers, Inc. (hereinafter McAllister), whose headquarters were located in New York City. In 1970, petitioner moved his family residence from New York City to Lauderhill, Fla. This move was prompted primarily to safeguard the health of petitioner's 7-year-old daughter who had diabetes. His family doctor had advised that a move to a warmer climate was necessary to save the child's life. *306 Upon moving to Florida, petitioner was initially employed as a construction worker, but was laid off in early 1971. After failing at attempts to find employment as either a construction worker or tugboat captain in Florida, petitioner accepted a position as tugboat captain for McAllister in March of 1971. His duties included navigating, steering, docking and undocking of ships and issuing all work orders. All of petitioner's duties were performed on the tugboat with the exception of an occasional phone conversation between petitioner, at his home in Florida, and McAllister's New York City office concerning reports needed to be filed by him. During the years in issue, petitioner worked a 7-day shift on the tugboat, beginning on Monday and ending on Monday of the following week. He would then be off work until the following Monday and, except as hereinafter noted, would return to his home in Florida for that week. At 6:00 p.m. on the Sunday before his work week was to begin, he would call the McAllister dispatcher who would tell him which port to report to the next day in order to begin his weekly shift. While the tugboat's home port was the New York City metropolitan area, the *307 possible locations in which petitioner would either report to or be relieved from duty included the ports of Norfolk, Va., Philadelphia, Pa., Jersey City, N.J., the tugboat's shipyard, Port Elizabeth, N.J., Boston, Mass., Fall River, Mass., Providence, R.I., and Puerto Rico. [4] The port to which petitioner reported depended on where the tugboat was located as of the Monday beginning his work week. At the end of the work week, a new crew would come aboard and replace the existing crew, including petitioner. This crew change took place at whichever port the tugboat happened to be located as of the Monday ending the work week. Some of these Monday crew changes occurred late in the evening, making travel home by petitioner impractical, in which case he would get a hotel room for one night and return home the next day. Petitioner's mode of transportation between his home in Florida and each of the various *308 ports was by air. Every week he made a one-way flight, either to where the tugboat was located or to home in Florida depending on whether he was beginning or ending his 1-week work shift. However, during the months of June to September in each of the years in issue when he and his family resided at their home in New York, [5] petitioner claimed no expenses for traveling to or from the port of the weekly crew change. McAllister was required by union contract to pay for one-half of the expenses of one round-trip ticket per month which petitioner actually incurred in any travel originating from New York. None of the amounts claimed as deductions herein were reimbursed by McAllister. On the returns filed for each of the years in issue, petitioner deducted the following amounts as travel expenses for traveling to and from the port of the weekly crew change: 1976
1977
Air fare
$ 5,460
$ 5,780
Meals and lodging
318
340
In the statutory notice of deficiency, respondent totally disallowed these deductions. Casualty loss
Petitioner owned property in Broad Channel, N.Y., upon which a house was situated, which property he purchased in 1960 for *309 $ 8,500. The house was used as the family residence during the months of June to September prior to and during the years here involved. It had three small bedrooms, a kitchen, living room, and one bathroom. On the property behind the house was some land which abutted on a waterway and which had a bulkhead [6] shoring up the ground. A boat could be docked against the bulkhead. The home was originally built in the early 1930's, although the original bulkhead was replaced at some time during the 1950's. In January or February of 1976, the bulkhead was damaged by a storm. The damage resulted when the water against which the bulkhead abutted froze and the ice ripped out the bulkhead and washed away the dirt that had been on top of it. Until the occurrence of this storm, the bulkhead had been in good shape. In August of 1977, petitioner had the dock repaired by individuals in his neighborhood who had experience building docks. [7] The cost of repairs amounted to *310 $ 3,760 for expenditures as follows: [8]
Amount expended
Equipment rental
$ 1,100
Lumber
2,160
Labor
500
In repairing the bulkhead petitioner had the pilings put in deeper than those of the bulkhead which had washed away. The bulkhead, as repaired, was built better than the bulkhead which had been destroyed so as to prevent similar destruction from occurring again. As earlier noted (note 3, supra), no casualty loss deduction was *311 claimed on petitioners' return for 1976. Nor was any deduction claimed for any later year. OPINION Away-From-Home Expenses
The first issue for determination is whether petitioner was entitled to deduct, under section 162(a)(2), [9] expenses incurred in travel between his home in Florida and the various ports in which his crew changes occurred, including air fare, meals, and lodging. Respondent denied deduction of the travel expenses on the grounds that: (1) Petitioner's "home" for purposes of section 162(a)(2) was the New York City metropolitan area and therefore the claimed expenditures were personal, nondeductible commuting expenses under section 262; and (2) in any event, petitioner has failed to substantiate his claimed expenditures as required *312 by section 274(d), except for airfare to the extent of $ 3,077 in 1976 and $ 3,539 in 1977, respectively. Under section 262 no deduction for personal, living or family expenses is allowed. Generally, any expenses incurred for travel, meals and lodging are nondeductible. Chappie v. Commissioner, 73 T.C. 823 (1980); sec. 1.262-1(b)(5), Income Tax Regs. However, section 162(a)(2) permits a taxpayer to deduct such expenses if incurred while "away from home in the pursuit of a trade or business." In the leading case of Commissioner v. Flowers, 326 U.S. 465, 470 (1946), the Supreme Court required all three of the following conditions be met before a traveling expense can properly be deducted: (1) The expense must be reasonable and necessary; (2) it must be incurred while away from home, and (3) it must be incurred in pursuit of business. While most cases involving this issue turn on where the taxpayer's "home" is for tax purposes, there is also the requirement for deductibility under section 162 that the travel expenses be incurred because of the exigencies of his employment and not for his personal convenience. Commissioner v. Flowers, supra; Tucker v. Commissioner, 55 T.C. 783 (1971). *313 While there is no hard and fast definition of "home" as used in section 162(a)(2), such term has generally been defined by this Court to mean the vicinity of the taxpayer's principal place of employment, not where his personal residence is located if it is located elsewhere. Mitchell v. Commissioner, 74 T.C. 578 (1980); Kroll v. Commissioner, 49 T.C. 557 (1968); Garlock v. Commissioner, 34 T.C. 611 (1960). A taxpayer is expected to live in the vicinity of his employment. Tucker v. Commissioner, supra.On the other hand, if a taxpayer does not have a principal place of employment, either because he is only temporarily employed, see Mitchell v. Commissioner, supra; Rambo v. Commissioner, 69 T.C. 920 (1978); cf. McCallister v. Commissioner, 70 T.C. 505 (1978), or is permanently employed but business exigencies reuire he work on the road as it were, with no definite location or area to report to, his permanent residence may be considered his home for tax purposes. [10] To be considered as only temporarily employed "the employment must be temporary in contemplation at the time of its acceptance and not indeterminate in fact as it develops." McCallister v. Commissioner, supra at 509. The *314 consequence of a determination of where the "tax home" is located is that deductions for travel, meals, and lodging are allowed in respect of travel in pursuit of business, originating from that home, but not for any added costs incurred by reason of using another location as the point of origin. Bunevith v. Commissioner, 52 T.C. 837 (1969). [11] Thus in order for petitioner to prevail on the issue herein, he must first prove either that his employment with McAllister was temporary or that as an employee of McAllister he had no principal place of business, thereby excluding the New York City metropolitan area as such. Petitioner did not argue, either at trial or on brief, that his employment with McAllister was temporary. Moreover, we note that such employment began in 1971 and continued up to and throughout the taxable years in issue. Respondent determined in the notice of deficiency that petitioners' tax home, or principal place of business, was the New York metropolitan area, and petitioner has the burden of proving that such determination *315 was incorrect. Unfortunately, like many pro se taxpayers, petitioner assumed that the Court knew as much as he did about his schedule of service aboard the tugboat during the years before us and he failed to give us sufficient evidence to trace his activities with any degree of certainty. We do know that the home office of McAllister, his employer, was in New York, that the tugboat's home port was the New York metropolitan area and its shipyard was Jersey City, N.J., in the New York metropolitan area. While petitioner's income-producing activity was aboard the tugboat as it plied along the eastern seaboard, there were a number of harbors from Boston, Mass., to Norfolk, Va., where petitioner might have to board or leave the boat in a crew change. We do not know how often petitioner's crew change took place in any one of these ports. We do not know whether petitioner boarded and left the boat more frequently in the New York metropolitan area or somewhere else, but we do know that when petitioner was spending the summer months at his home in New York he did not claim deductions for travel expenses, and there is also evidence that McAllister was required by a union contract to reimburse *316 the crews for one-half of a round trip ticket from New York to the location of the boat once a month if the crew member actually traveled from New York to the boat. The above facts do not necessarily prove that petitioner's principal place of business was in the New York area but they do tend to support rather than rebut respondent's determination. Compare Heuer v. Commissioner, 32 T.C. 947 (1959), affd. 283 F.2d 865 (5th Cir. 1960), and Steinhort v. Commissioner, 335 F.2d 496 (5th Cir. 1964). Unlike the taxpayer in Ireland v. Commissioner, T.C. Memo. 1979-386, a case very similar to this case, petitioner presented no evidence with respect to the frequency of any of his crew changes in any particular port. Whether petitioner had a principal place of business is a factual issue and the burden of proof is on him. Rambo v. Commissioner, 69 T.C. 920 (1978). In light of the lack of evidence to the contrary we conclude that petitioner has not met his burden of proof and that respondent's determination that the New York City metropolitan area was petitioner's home for section 162(a)(2) purposes must be sustained. [12] Therefore, while petitioner would have been entitled to deduct travel *317 expenses in respect of travel originating in New York we have no way of determining from this record how much, if any, of petitioner's travel expenses were incurred in travel between New York and the tugboat.
But even if we concluded that the New York metropolitan area was not petitioner's principal place of business we could not allow a deduction for his travel expenses between his home in Florida and the places he boarded and left the tugboat. True, the courts have recognized that if a taxpayer does not have a principal place of business his permanent home may be considered his tax home for purposes of section 162(a)(2). See Mitchell v. Commissioner, supra; Ireland v. Commissioner, supra.However, this rule has its limitations, which we think are applicable here. To be deductible under section 162(a) the traveling expenses must be incurred by the exigencies of the business rather than for personal convenience. Presumably, petitioner's *318 decision after March 1971 not to reestablish his residence in New York or some place within the general area of where petitioner made his crew changes was motivated by concern for the health of their child. This is very laudatory, but inability to move a residence to the area of business because of the health of a family member is clearly a personal reason not caused by business exigencies. Curtis v. Commissioner, 449 F.2d 225 (5th Cir. 1971), affg. T.C. Memo. 1970-299. One thing that is clear from this record is that petitioner's home in Florida was far removed from the general area where petitioner made his crew changes, compare Ireland v. Commissioner, supra, and McKarzel v. Commissioner, T.C. Memo. 1971-91, and most of the travel expense was incurred for that reason, which must be considered to have been for his personal convenience.[13] *319 We conclude that petitioners are not entitled to a deduction for travel expenses in 1976 and 1977. In light of this holding we need not decide the extent to which petitioner has substantiated his expenditures. Casualty loss
Petitioner claims that damage to a bulkhead on his property was caused by a storm ocurring in either January or February of 1976. He asserts this is a casualty loss within the meaning of section 165(c)(3) for which he is entitled to a deduction. [14] *320 It is respondent's position that petitioner has failed to prove the loss was due to the occurrence of a casualty, or, alternatively, that he has failed to establish both the year in which the loss occurred and the amount of such loss. To constitute a casualty within section 165(c)(3), it is incumbent that the damage result from the occurrence of a sudden or unexpected event, rather than from the progressive deterioration of property through a steadily operating cause. Durden v. Commissioner, 3 T.C. 1 (1944). We found petitioner's testimony to be candid, forth-right, and credible. When he testified that his bulkhead was damaged "in that storm in '76," which had occurred in either January or February of that year, it was clear he was referring to a single identifiable storm. Prior to this storm the bulkhead had been in good shape and the fact it was between 17 and 26 years old does not preclude the possibility that damage was caused by a casualty, rather than by deterioration due to old age. Based on the testimony presented at trial and the record as a whole we find that damage to petitioner's bulkhead occurred in 1976 [15] *321 and was caused by a storm constituting a casualty within the meaning of section 165(c)(3). [16]
Generally, the amount allowable as a casualty loss is the lesser of (1) the difference in fair market value of the property immediately before the casualty and immediately thereafter, and (2) the adjusted basis of the property. Helvering v. Owens, 305 U.S. 468 (1939); sec. 1.165-7(b)(1), Income Tax Regs. The cost of repairs actually incurred will be accepted as evidence of the difference in fair market value if (1) the repairs are necessary to restore the property to its condition immediately before the casualty; (2) the amount spent for such repairs is not excessive; (3) the repairs do not care for more than the damage suffered; and (4) the value of the property does not as a result of the repairs exceed the value of the property immediately before the casualty. Sec. 1.165-7(a)(2)(ii), Income Tax Regs. In determining a casualty loss which involves real property and improvements thereon not used in a trade or business or in any transaction entered into for profit, the adjusted basis of the entire property may be used *322 without apportioning such basis to such improvements. Sec. 1.165.7(b)(2)(ii), Income Tax Regs.; accord, Western Products Co. v. Commissioner, 28 T.C. 1196, 1219 (1957). Accordingly, the adjusted basis for our purposes herein is $ 8,500, the total cost of petitioner's New York property. Respondent argues that petitioner has not established the fair market value either immediately before or after the casualty. Moreover, it is asserted that the cost-of-repairs method for determining the difference in fair market value is not available to petitioner as he has not merely restored the bulkhead to its condition just preceding the casualty, but has built a better one and furthermore, because he has not established that the value of the property did not as a result of the repairs exceed its value immediately before the casualty. We would agree with respondent that petitioner has not presented sufficient evidence for us to determine with any exactitude the difference in fair market value. However, in view of the amounts expended in repairing the bulkhead, and of photographs presented as evidence indicating the extent of the damage, we find that the value of the property was, at least to some *323 extent, affected by damage to the bulkhead. Applying the so-called Cohan rule, and "bearing heavily" against petitioner whose "inexactitude" is of his own making, we hold that $ 2,500 fairly represents the difference in the fair market value of the property immediately before and after the storm. [17] See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). As the adjusted basis of $ 8,500 is greater, petitioner is entitled to a deduction under section 165(c)(3) in the amount of $ 2,500 less the statutory $ 100 floor. Additions to tax
Respondent determined that additions to tax under section 6653(a) should be made, asserting that at least a portion of the underpayment for each year in question was due to negligence or intentional disregard of the rules and regulations. As respondent correctly points out, the burden of proof is upon petitioner to prove the assessment is wrong. Rule 142(a). The record as a whole shows that petitioner, in good faith, honestly believed that expenses for travel between his home and work were properly deductible. We note that the issue concerning the deductibility of such expenses was a close one and *324 presented substantial questions of law and fact. Under the circumstances herein, we do not believe petitioner negligently or intentionally disregarded the rules and regulations and therefore hold that he is not liable for the additions to tax determined by respondent. Cf. Kasey v. Commissioner, 54 T.C. 1642, 1651 (1970), affd. per curiam 457 F.2d 369 (9th Cir. 1972). Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue.↩
2. Respondent disallowed certain other itemized deductions claimed in petitioners' joint Federal income tax return for lack of substantiation. The extent to which suchf deductions could be verified was less than the applicable standard deduction which was therefore substituted by respondent in place of itemized deductions claimed. Petitioner conceded he could not verify these deductions in excess of the standard deduction. ↩
3. Petitioners did not claim a casualty loss on their joint tax return for 1976 nor in their petition, as amended, filed Nov. 5, 1980. At trial they were granted the right to amend their petition to raise the issue of a casualty loss and to present evidence and give testimony in support of their claim. An amended petition, claiming a casualty loss for 1976, was filed on Feb. 26, 1981.↩
4. There is no evidence in the record as to the number of crew changes, if any, which occurred in each of the various ports during the taxable years in issue. There is no evidence that petitioner went to Puerto Rico to board a boat or left a boat in Puerto Rico in the years before us.↩
5. See casualty loss issue for description of this home.↩
6. A bulkhead apparently can serve the same purpose as a dock. Additionally, it serves to both resist pressure or shut off water and as a retaining wall along a waterfront. See Webster's Third New International Dictionary (1971).↩
7. While there was some conflicting testimony as to whether the repairs took place in August or December of 1977, the bulk of the evidence is in favor of August of 1977. ↩
8. The receipt for the lumber expense was dated Sept. 16, 1978. However, petitioner explained that it was not until this time that he requested the receipt after determining he may need it for income tax purposes. The expenditure for the equipment rental was evidenced by a rental agreement dated Aug. 10, 1977, and marked "pd. in full $ 1,100.00" as of Aug. 16, 1977. The rental agreement provided "Equipment to be used at 38 West 17th Rd. Broad Channel N.Y. * * * for repair of existing bulkhead and dock." No evidence was presented as to the expenditure for labor other than petitioner's oral testimony.↩
9. Sec. 162 provides in pertinent part as follows: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
10. See Ireland v. Commissioner, T.C. Memo. 1979-386↩. 11. See also Daly v. Commissioner, 72 T.C. 190 (1979), revd. 631 F.2d 351↩ (4th Cir. 1980).
12. Because of the inadequacies in the record in this case, we need not decide whether to stand our ground in Daly v. Commissioner, 72 T.C. 190 (1979), or follow the reversal of that case by the Court of Appeals for the Fourth Circuit, 631 F.2d 351↩ (1980).
13. We might add that while the location of petitioner's home, possibly dictated by unavoidable circumstances, added to his travel expenses, he was not incurring the expense of maintaining two homes (one for himself and one for his family), the mitigation of which was one of the principal reasons for the enactment of sec. 162(a)(2) and its predecessors. Commissioner v. Flowers, supra; Tucker v. Commissioner, supra; Kroll v. Commissioner, supra↩.
14. Sec. 165 provides in pertinent part as follows: (c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $ 1000. * * * (Emphasis added.)
15. Respondent argued that petitioner's evidence was conflicting and therefore failed to establish whether the loss occurred in 1976 or 1977. 16. See Getz v. Commissioner, T.C.Memo. 1965-110; Tatham v. Commissioner, T.C.Memo. 1979-205↩.
17. Cf. Young v. Commissioner, T.C. Memo. 1977-38↩.