**Charles C. DIGGS, Jr. and Janet H. Diggs, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 82–1035.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 18, 1983.

Decided Aug. 18, 1983.

John S. Nolan, Miller & Chevalier, Victor Thuronyi (argued), Washington, D.C., for petitioners.

Kenneth W. Gideon, Jr., Chief Counsel, I.R.S., George M. Sellinger, Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Michael L. Paup, Jonathan Cohen (argued), Washington, D.C., for respondent.

Before MARTIN and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Petitioners, Charles C. Diggs, Jr. and his wife, Janet H. Diggs,[1] appeal from a tax court judgment, 76 T.C. 888, disallowing a deduction for expenses incurred while attending National Black Political Conference (BPC) meetings and the Democratic National Convention (DNC). The issue on appeal is whether these expenses were properly deducted as the ordinary and necessary expenses of Charles Diggs' business when serving as a United States Congressman, pursuant to 26 U.S.C. § 162. We find that the tax court erred in disallowing a deduction for expenses incurred while then Congressman Diggs attended BPC meetings, but properly disallowed a deduction for expenses incurred while he attended the DNC.

The facts relevant to this appeal are uncontroverted. During 1972, the taxable year in issue, Charles Diggs represented the 13th Congressional District of Michigan in the United States House of Representatives. He ranked 19th of 435 House members, and was the senior ranking Michigan delegate, from a district that includes a portion of Detroit. Diggs served on the House Committee on Foreign Affairs and the House Committee on the District of Columbia.

Diggs attended the 1972 Democratic National Convention, held in Miami, Florida as an official voting delegate. He was Chairman of the Minorities Division of the Democratic National Committee and was a principal host to other party delegates to the Convention. As part of the guidance and leadership procedure of the Democratic Party, Diggs participated in discussions and strategies to try to achieve a favorable response to the petitions of minority groups before the Democratic Party's platform committee, credentials committee, and rules committee. He also attended the convention in order to serve as an officer of the Democratic National Committee.

Between March 10 and 13, 1972, Congressman Diggs attended the National Black Political Conference, a nonpartisan nonprofit meeting of about 10,000 people, held in Gary, Indiana. The Congressman attended meetings of the BPC to assess the concerns of black citizens in the United States and to develop a national black agenda regarding those concerns. The great majority of Congressman Diggs' constituents are black. The agenda published by the National Black Political Conference was presented to the platform committees of both the 1972 National Democratic Party and the National Republican Party Conventions.

The Congressman testified that his attendance at the DNC and the BPC helped to represent the views of his constituents, some of whom attended those events. Congressman Diggs incurred $1,303 in travel expenses, including meals and lodging, for attendance at BPC meetings. In addition to the Gary assembly, this organization held meetings in Illinois, Ohio, New York and Nevada. Diggs expended $1,083 for travel expenses, including meals and lodging, to

---

1. Janet H. Diggs, the wife of Charles C. Diggs, Jr., is a party to this proceeding only by virtue of having filed joint federal income tax returns for the year at issue.

attend the DNC in Miami, Florida from July 7 through July 15, 1972.

Congressman Diggs argues that his primary purpose for attending the DNC and the BPC meetings was to investigate and ascertain the facts and concerns of minorities in order to serve his constituents, to gain their guidance in his voting, and to reflect their views. The Congressman contends that those expenses, therefore, were ordinary and necessary business expenses deductible under § 162(a)(2) and were not political expenses, the deduction of which is limited by §§ 162(a), 162(e)(1) and (2). Before the tax court, the Commissioner argued § 162(e)(2)(A) denies a deduction under § 162 when the expenses are incurred in connection with participation or interaction in political campaigning. The Commissioner also argued below that § 162(e)(2)(B) precludes any deduction because the Congressman's expenses were incurred in connection with an attempt to influence the general public with respect to legislative matters or elections.

In its majority opinion,[2] the tax court agreed with the Commissioner that Congressman Diggs' traveling expenses were not deductible because they "were essentially political in nature and not sufficiently related to the functions of his office as Congressman." The majority also concluded that those expenses are not deductible as "incurred in connection with appearances, etc., with respect to legislation under section 162(e)."

## A. The Proper Legal Standard

The initial question presented by this appeal is whether the tax court correctly concluded that the § 162(a) "business expense" deduction standard does not apply to this case because the Congressman's expenses were (1) incurred with respect to legislative appearances under § 162(e), (2) essentially political in nature, or (3) incurred as an inextricable part of the election process. Upon consideration of the legal issues presented by this appeal, we find that the tax court erred in not applying § 162(a) to the facts of this case.

## (1) Section 162(e): Legislative Appearances

The majority of the tax court concludes that § 162(e) prevents Congressman Diggs from deducting expenses incurred while attending BPC meetings and the Democratic National Convention. Section 162(e), the so-called "lobbying" section, allows a deduction for expenses directly connected with appearances before legislators. Section 162(e)(2)(B), however, excludes from such deductible "lobbying" expenses, any expenses incurred "in connection with any attempt to influence the general public, or segments thereof, with respect to legislative matters, elections or referendums [sic]." Congressman Diggs never claimed that his expenses were deductible under § 162(e). On appeal, the Commissioner virtually ignores that provision.

We agree that § 162(e) is irrelevant to the analysis and resolution of the issues in this case. That section was a legislative response to the regulations adopted in 1959 following the Supreme Court's decision in the case of *Cammarano v. United States,* 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959). *See* H.Rept. 1447, H.R. 10650, 87th Cong., 2d Sess. (1962). In *Cammarano,* the Supreme Court disallowed a deduction for the ordinary and necessary expenses incurred to defeat a legislative initiative. In adopting § 162(e), Congress intended to provide a deduction for the promotion of legislation and to deny a deduction for "grass-roots lobbying."

Our review of the legislative history of § 162(e), reveals that Congress did *not* intend to include within that provision's scope the ordinary activities of a member of Congress. During the initial Senate debate on the lobbying deduction, Senator Kerr, who was influential in its adoption, reminded that "every member of Congress has a deductible item [of up to $3,000 for living expenses while attending to his or her business in Washington] even though his business for the moment is lobbying." The

2. 76 U.S.T.C. 900 (1981).

regulations affecting lobbying deductions, therefore, were not explicitly intended to apply to members of Congress.

Those regulations provide that lobbying expenses are not deductible unless the legislation is of direct interest to the taxpayer's business. Section 162(e)(1)(A); Treas.Reg. § 1.162–020(c)(2)(ii)(b)(1)(i). According to these regulations, however, "a taxpayer does not have a direct interest in matters such as nominations, appointments or the operation of the legislative body." Treas. Reg. § 1.162–20(c)(2)(ii)(b)(3). *See also,* H.R.Rep. No. 1447, 87th Cong., 2d Sess. 13 (1962). The coexistence of these provisions is anomalous, therefore, where the taxpayer's business is "the operation of the legislative body." This anomaly demonstrates that Congress could not have intended in its "lobbying" regulations to include the activities of elected representatives.

Not only does the congressional intent behind the lobbying provisions indicate that Congressmen were not intended to be included, but the public policy behind those provisions does so as well. The denial of a business expense deduction for the promotion of legislation helps neutralize organizational and financial influences of businesses seeking to promote that legislation. See *Cammarano,* 358 U.S. at 512, 79 S.Ct. at 533; Cooper, *The Tax Treatment of Grass Roots Lobbying: Defining and Attaining the Public Policy Objectives,* 68 Col.L.Rev. 801, 807 (1968); Note, *Deducting Business Expenses Designed to Influence Governmental Policy as "Ordinary and Necessary" Cammarano v. United States and a Bit Beyond,* 69 Yale L.J. 1017, 1020 (1960). Congress certainly could not have intended to neutralize the organizational and financial influence of the "business" of being a Congressman. Public policy and congressional intent clearly indicate that a Congressman's normal business activities are not included in the scope of § 162(e).

█ Public policy and congressional intent, in this case, merely reinforce common sense. In attending the BPC meetings and the Democratic National Convention, Congressman Diggs did not "appear" before a legislator. Indeed, the Congressman *is* a legislator. All proposed legislation is of "direct interest" to the Congressman, as an integral part of his trade or business. The Congressman, for tax purposes, does not lobby; rather he *is* lobbied. In light of common sense, public policy and legislative intent, we conclude that Congressman Diggs' activities in this case do not fall within the purview of § 162(e).

### (2) Essentially Political in Nature

█ Section 162(a)(2) of the Internal Revenue Code allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including ... (2) traveling expenses." The phrase "trade or business" includes the performance of the functions of the public office of United States Congressmen. 26 U.S.C. § 7701(a)(26). Expenses incurred in "carrying on" the duties of a Congressman are deductible if "necessary for the development of the [taxpayer's] business, at least in the sense that they were appropriate and helpful." *Commissioner v. Tellier,* 383 U.S. 687, 689, 86 S.Ct. 1118, 1119, 16 L.Ed.2d 185 (1966); *Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Those expenses must also be "ordinary" or "normally to be expected in view of circumstances facing the business." *Palo Alto Town & Country Village, Inc. v. C.I.R.,* 565 F.2d 1388, 1390 (1977), *citing, C.I.R. v. Heininger,* 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943).

Regulation 1.162–2d allows a deduction for the travel and related expenses of attending a business convention. This same regulation, however, limits the taxpayer's ability to take such a deduction where the convention is attended for "purposes unrelated to the taxpayer's trade or business." The regulation provides:

Expenses paid or incurred by a taxpayer in attending a convention or other meeting may constitute an ordinary and necessary business expense under Section 162 depending upon the facts and circumstances of each case.... The allowance

of deductions for such expenses will depend upon whether there is a sufficient relationship between the taxpayer's trade or business and his attendance at the convention or other meeting so that he is benefitting or advancing the interest of his trade or business by such attendance. *If the convention is for political, social or other purposes unrelated to the taxpayer's trade or business, the expenses are not deductible.* (Emphasis added) In an effort to apply this regulation, the majority of the tax court reasoned that Diggs attended the Black Political Conference and the Democratic National Convention for "political" purposes unrelated to his "trade or business." The court acknowledged that expenses incurred in attending a political convention would be deductible if the taxpayer attended the convention "for purposes directly related to his trade or business rather than for political purposes."

We find untenable the tax court's dichotomy between "political" and "business" purposes. As the majority recognized, a Congressman's trade or business is "quintessentially" political. Congressman Diggs performs a political role as a representative of his constituents, a legislator, an educator, a policymaker, a candidate and a member of a political party. These political activities, contrary to the majority's view, may very well be connected with the Congressman's business activities, as a Congressman.

Diggs' activities, like virtually all of the business or trade activities of members of Congress, are unquestionably political. Yet, the majority and the Commissioner admit that a representative may have deductible expenses for some of the unquestionably political activities of membership in the House of Representatives. The distinction between business and political activities, therefore, is illogical and must be reformulated where the taxpayer's "business" is politics. We do not interpret Regulation 1.162–2d to establish such a distinction. As the tax court recognized, this reg-

ulation does not create an exception to the general business deductions rule where political conventions are involved. Instead, the regulation only reemphasizes that attendance at a political convention must be related to the taxpayer's trade or business.[3]

### (3) Election Process

■ The question that we must address, therefore, is not whether the Congressman's activities are political, but whether those activities are sufficiently related to the Congressman's trade or business as a Congressman to qualify for a deduction. Campaign expenses certainly are not sufficiently related to a public officeholder's trade or business to be deductible. In *McDonald v. Commissioner,* 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68 (1944), the Supreme Court held that the expenses of a Pennsylvania state judge in seeking election were not expenses of the officeholder's trade or business under the immediate predecessor to § 162(a).[4] The Court declared that "expenses incurred in being a judge" were deductible, but expenses incurred "in trying to be a judge for the next ten years" were not deductible. 323 U.S. at 60, 65 S.Ct. at 97. In view of the complex public policy issues involved, the Court held that the deduction of campaign expenses should not be allowed absent a specific directive from Congress. Congressional acquiescence and recent case law have established as axiomatic the principle that campaign expenses are not deductible. *Levy v. United States,* 210 Ct.Cl. 97, 535 F.2d 47 (U.S.C.C.1976); *Nichols v. C.I.R.,* 511 F.2d 618 (5th Cir.), *cert. denied,* 423 U.S. 912, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975).

*McDonald* and its progeny explicitly recognize that politicians perform many different functions. Each function, therefore, must be examined to determine whether it is related to the business of *being* an officeholder, rather than of becoming one. *McDonald* and its progeny also make clear

---

**3.** *See also Darling v. Commissioner,* 4 B.T.A. 499 (1926).

**4.** The *McDonald* decision rested on § 23(a)(2)(Ak) of the Internal Revenue Code of 1939. That provision is identical to § 162(a) of the current Code.

that expenses incurred in payment to an officeholder's political party are not deductible. In *McDonald,* the Supreme Court disallowed a deduction for the judge's payment to his party's executive committee. The Court held that this payment, which "went to the entire campaign fund in the service of the party's entire ticket," was not deductible as an expense of the judge's business. In *Nichols v. C.I.R.,* 511 F.2d 618 (5th Cir.1975), the Fifth Circuit relied on *McDonald* and declared that a fee paid by a state supreme court justice to the state political party in order to have his name placed on a primary ballot was not deductible from income as an ordinary and necessary expense incurred in the judge's trade or business. *Accord Levy v. United States,* 535 F.2d at 49.

█ Moreover, the contributions of a legislator to his political party through his convention attendance have been held to be nondeductible. In Rev.Rul. 76–64, 1976–1 C.B. 45, the taxpayer, an elected legislator, was denied a deduction for expenses he incurred in attending his political party's biennial convention as a participant on a panel concerning law enforcement. The primary purpose of the convention was to plan party strategy and party advancement. The taxpayer's expenditures for such strategy and advancement were deemed not directly connected with a legislator's business. The expenses which an officeholder incurs, therefore, in connection with his personal political goals or with the political goals of a party have been held to be nondeductible. We recognize that the trend of recent tax court decisions may be to allow deductions for expenses incurred in seeking new employment. *See, e.g., Black v. C.I.R.,* 60 T.C. 108 (1973); *Primuth v. C.I.R.,* 54 T.C. 374 (1970). But we follow more recent tax court and appellate court decisions in rejecting the analogy between seeking new employment and seeking new political office. In *Carey v. C.I.R.,* 56 T.C. 477 (1971), *aff'd.,* 460 F.2d 1259 (4th Cir.1972), the tax court distinguished deductible new employment expenses from nondeductible campaign expenses:

Unlike employment agency fees, we do not think that common understanding in the ordinary affairs of life would consider that campaign expenditures should be encompassed as "ordinary and necessary" expenses . . . .

56 T.C. at 481. *See also Levy,* 535 F.2d at 50. The fact that expenses incurred in seeking employment may be deductible, therefore, does not undermine the nondeductibility of expenses incurred in connection with political self-aggrandizement or political party aggrandizement.

Although we conclude that personal and party aggrandizement is not sufficiently connected with the trade or business of *being* a Congressman to qualify for a § 162(a)(2) deduction, we do not deny that some activities are indeed so closely related to the trade or business of *being* a Congressman as to qualify for such a deduction. Revenue Ruling 76–64, 1976–1, C.B. 45 denied a deduction to a legislator who attended a political convention; but the clear focus of that ruling was the specific activity of the legislator at the convention. In the ruling, the legislator attended the convention for the specific purpose of advancing his political party, rather than his trade or business. Had the legislator attended the convention in connection with his trade as a legislator, those expenses may have been deductible.

█ There is no question that a member of Congress may have deductible expenses of his or her trade or business as a member. *See* Revenue Ruling 65–224, 1965–2 C.B. 42. We are certainly not prepared to say, for example, that the efforts of congressional representatives to learn of the concerns facing their constituents are activities outside the scope of their trade or business. To this effect, the Tax Court has held recently that a legislator's trade or business includes discussion of the issues with constituents. *Chappie v. Commissioner,* 73 T.C. 823 (1980). In *Chappie,* the Tax Court stated:

Petitioner was in his trade or business as a State legislator. As such, his duty was to represent constituents in the state legislature. He cannot represent the con-

stituents adequately without discussing the issues with and ascertaining the needs of the voters in his district. 73 T.C. at 833. The trade or business of a Congressman clearly includes the "representation of constituents." The healthy pursuit of that trade or business furthermore requires that a congressional representative become educated in the concerns of constituents. That education necessarily includes ascertaining and assessing the particular needs and interests of those constituents. Through this educational process, a congressman more fully represents and advances before the House of Representatives the interests of his or her constituents. The "educational" expenses incurred by a congressman in ascertaining and assessing the interests of constituents may be less formal than those educational expenses typically afforded a § 162 deduction, but they are nonetheless directly related to the trade or business of a congressman.[5]

■ We are led by the clear import of the case law in this area, therefore, to conclude that the expenses incurred by a legislator in connection with the duty to ascertain, assess and advance the interests of constituents are deductible, while expenses incurred by a congressman in connection with personal and party aggrandizement are not deductible.

### B. Application of the Proper Legal Standard

#### (1) National Black Political Conference

■ In 1972, Congressman Diggs attended ten meetings of the BPC. The first of these meetings was held in Michigan, the state from which Diggs was elected and in which he ran for reelection in 1972. The conference's assembly was held in Gary, Indiana on March 10 through 13, 1972. The remaining eight meetings were held in Illinois, Ohio, New York and Nevada. The purpose of these BPC meetings was "to make an assessment of the concerns of black citizens in the United States and to develop a national black agenda regarding those concerns." Congressman Diggs testified that the national black agenda was used as a basis for legislation by the congressional black caucus. The agenda was presented to the platform committees of both the Democratic and the Republican National Conventions of 1972. The BPC clearly desired its agenda to be a part of a national platform, regardless of which party succeeded in the election. The objective was to · commit both parties to minority legislative goals, rather than to support either party in the general election.

These minority legislative goals are largely the goals of Congressman Diggs' constituency, the great majority of which are black. In his role as the senior black member of the House of Representatives, and as the representative of a predominantly black district, Congressman Diggs' participation in the formulation of a nonpartisan minority legislative agenda was certainly connected with his trade or business as a legislator. At the BPC meetings, Congressman Diggs ascertained the problems faced by his constituents, identified those solutions that are legitimately pursued through the legislative process, informed his colleagues about those concerns and solutions, and received guidance and alliance from those colleagues toward effectuating legislative action on behalf of his constituents. We cannot say that such activities by Congressman Diggs on behalf of his constituents did not indirectly increase the possibility of his reelection. But neither are we prepared to say that every action by a Congressman on behalf of constituents is motivated solely by

---

5. Expenses for travel as a form of education are deductible to the extent that the major portion of such travel directly maintains and improves skills required in employment. Reg. § 1.162–5(d). Moreover, when a taxpayer travels away from home primarily to obtain an education, the expenses of which are deductible, his expenses for travel meals and lodging while away from home are deductible. Reg. 1.162.5(e)(2).

Although we do not rest our decision solely on these regulations, we do note that the expenses which Congressman Diggs incurred in ascertaining and assessing the interests of his constituents are analogous to those deductible educational expenses which help maintain and improve skills required in employment.

the drive toward personal or party aggrandizement. In this case, where Congressman Diggs' attendance at BPC meetings was so directly connected with ascertaining, assessing and advancing the interests of his constituents independent of party affiliation, we hold that the expenses incurred in that attendance are sufficiently related to the trade or business of a legislator to be deductible under § 162(a).

(2) The Democratic National Convention

 Diggs played a significant role at the Democratic National Convention as a voting delegate. Attendance at the Democratic National Convention as a delegate, of course, does not necessarily preclude a deduction. In Revenue Ruling 59–316, 1959, the Commissioner stated that:

> An individual who can bring his cause within the provisions of Section 162(a) of the Code by making a factual showing that he attended the convention in connection with his own business interests and is, therefore, entitled to a business expense deduction is not deprived of the deduction in the event he should be elected or appointed a delegate ...

Diggs' attendance at the DNC as a delegate, however, was not so directly connected to advancing the interests of his constituents as it was to advancing his own political goals and the goals of his party. The 1972 DNC convened within four months of the general election to select the Democratic Party's nominees for President and Vice-President. The convention adopted a party platform, a program and a strategy for the upcoming election.

The party's platform is carried to the polls on the shoulders of the party's presidential and vice-presidential nominees. That platform, however, is also buttressed by the party's nominees for other national offices. As the Democratic Party's candidate for reelection to the House of Representatives in 1972, Diggs was one such national officeholder responsible for advancing the party's platform.

Diggs' attendance at the DNC was thus inextricably connected to his own election goals and to the election goals of the Democratic Party. National attention and the media focused on the Democratic Party's effort to achieve those goals for itself and its officeholders. Diggs participated in that effort. His attendance at the DNC thrust his own reelection campaign and political career into national attention. Clearly, his attendance was more directly related to his own personal political goals and to the goals of his party than it was to the goals of his constituents. We conclude, therefore, that the expenses that Diggs incurred while attending the Democratic National Convention were not so directly connected with his trade or business as a legislator as to qualify for a § 162 deduction.

Upon application of the proper legal standard to the facts of this case, we hold that the expenses incurred by Congressman Diggs while attending the Black Political Conference were sufficiently connected with his trade or business as a legislator to be deductible under § 162. We also hold, however, that because the expenses incurred by Diggs while attending the Democratic National Convention were connected with personal and party aggrandizement, he is not entitled to a § 162 deduction for those expenditures.

Accordingly, the decision of the tax court is AFFIRMED in part and REVERSED in part.